Michael B. Garfinkel, Bar No. 156010
MGarfinkel@perkinscoie.com
Oliver M. Gold, Bar No. 279033
OGold@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park East, Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Autumn N. Nero (admitted *pro hac vice*)
ANero@perkinscoie.com
**PERKINS COIE LLP**
1 East Main Street, Suite 201
Madison, WI  53703
Telephone:  608.663.7460
Facsimile:  608.663.7499

Attorneys for Defendant
TREK BICYCLE CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAKE HIM SMILE, INC., a California corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>TREK BICYCLE CORPORATION, a Wisconsin corporation; and DOES 1 through 1000, inclusive,<br><br>                    Defendants. | Case No.: 2:17-cv-07136-RGK (KS)<br><br>**DEFENDANT TREK BICYCLE CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        December 18, 2017<br>Time:        9:00 a.m.<br>Judge:      Hon. R. Gary Klausner<br>Location:  Courtroom 850 |

TO THE COURT, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on December 18, 2017, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 850 of the United States District Courthouse, 255 East Temple Street, Los Angeles, California 90012, before the Honorable R. Gary Klausner, Defendant Trek Bicycle Corporation ("Trek") will, and hereby does, move this Court for an order dismissing Plaintiff Make Him Smile, Inc.'s ("Plaintiff") Complaint (the "Complaint").  This Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the Complaint fails to allege facts sufficient to state any claim upon which relief can be granted—Plaintiff cannot maintain a right of publicity claim under California law, or a derivative California Unfair Competition Law claim, because Chris Farley had no such rights when he died as a domiciliary of Illinois; Plaintiff cannot maintain a Lanham Act claim since it fails to allege that Trek used a distinctive attribute of Chris Farley; and in any event Trek's alleged use would amount to a nominative fair use and therefore is not actionable.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities and Request for Judicial Notice, any reply memorandum, the filings in this action, and such other matters as may be presented at or before the hearing.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on November 6, 2017.

1
2   DATED: November 13, 2017

3
**PERKINS COIE** LLP

By: */s/ Michael B. Garfinkel*
4       Michael B. Garfinkel
        Oliver M. Gold

5
6   Attorneys for Defendant
    Trek Bicycle Corporation

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.     INTRODUCTION ................................................................................ 1

II.    SUMMARY OF COMPLAINT ........................................................... 3

      1.     Chris Farley ................................................................. 4

      2.     Plaintiff and the "Farley IP." .................................... 4

      3.     Defendant and Its "Farley" Bike Model ..................... 5

III.   LEGAL STANDARD ........................................................................ 6

IV.    ARGUMENT ...................................................................................... 6

    A.     Plaintiff's Claims for Violation of California's Rights of Publicity Necessarily Fail Because the Common Law Right Is Not Descendible and the Statutory Right under Civil Code section 3344.1 Is Not Available to Chris Farley Who Died an Illinois Domiciliary ............................................................ 6

      1.     Chris Farley Does Not Have a Common Law Right of Publicity Under California Law Because It Is Not Descendible ................................................................. 7

      2.     Plaintiff Cannot Assert a Section 3344.1 Claim Because It Is Only Available to Personalities Who Die Domiciled in California, and Chris Farley Died Domiciled in Illinois ........... 7

      3.     Amendment Would Be Futile Because Chris Farley Also Has No Rights of Publicity Under Illinois Law ...................... 10

    B.     Plaintiff's Unfair Competition Claim Under Section 17200 Falls with Its Defective Statutory Right of Publicity Claim ........................ 11

    C.     Plaintiff's Lanham Act False Endorsement Claim Fails Because Plaintiff Does Not Allege the Requisite Use of a Distinctive Attribute, and, Even if It Had, It Would Amount to a Nominative Fair Use ...................................................................... 12

      1.     Plaintiff Fails to Allege that Trek Used a Distinctive Attribute of Chris Farley ........................................... 13

      2.     The Nominative Fair Use Defense Defeats Plaintiff's False Designation of Origin Claim .............................. 15

    D.     Leave to Amend Is Not Warranted .............................. 19

V.     CONCLUSION ................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

CASES

*1800 GET THIN, LLC v. Hiltzik,*
No. CV11–00505 ODW, 2011 WL 3206486 (C.D. Cal. July 25, 2011) ................................................................................................. 16

*Abdul-Jabbar v. General Motors Corp.,*
85 F.3d 407 (9th Cir. 1996) ........................................................... 13, 19

*Adaptive Mktg. LLC v. Girard Gibbs LLP,*
No. CV 09–04739 RGK, 2009 WL 8464168 (C.D. Cal. Oct. 9, 2009) ............................................................................................ 15, 16

*Architectural Mailboxes, LLC v. Epoch Design, LLC,*
No. 10cv974 DMS (CAB), 2011 WL 1630809 (S.D. Cal. Apr. 28, 2011) ................................................................................................. 16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................ 6, 14

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
459 U.S. 519 (1983) ........................................................................ 6, 15

*Beachbody, LLC v. Universal Nutrients*, LLC,
No. CV 16-02015-R, 2016 WL 3912014 (C.D. Cal. July 18, 2016) ................. 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................. 6

*Cairns v. Franklin Mint Co.,*
292 F.3d 1139 (9th Cir. 2002) ...................................................... passim

*Carlson v. Del Pub. Co.,*
65 Ill. App. 2d 209 (1965) .................................................................. 10

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) ....................................................................... 12

**TABLE OF AUTHORITIES**
**(CONTINUED)**

Page(s)

CASES

*Clark v. America Online Inc.*,
No. CV-98-5650 CAS, 2000 WL 33535712 (C.D. Cal. Nov. 30,
2000) ............................................................................................................ 17

*Comedy III Productions, Inc. v. Gary Saderup, Inc.*,
25 Cal. 4th 387 (2001) ..................................................................................... 7

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*,
778 F.3d 1059 (9th Cir. 2015) ....................................................................... 13

*Foman v. Davis*,
371 U.S. 178 (1962) ...................................................................................... 20

*Gordon v. City of Oakland*,
627 F.3d 1092 (9th Cir. 2010) ....................................................................... 20

*Headspace Int'l, LLC v. New Gen Agric. Servs., LLC*,
No. CV-16-3917-RGK, 2016 WL 9275781 (C.D. Cal. Nov. 15,
2016) .............................................................................................................. 8

*In re Estate of Elson*,
120 Ill. App. 3d 649 (1983) ............................................................................. 9

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ................................................................................... 11

*In re Tower Park Properties, LLC*,
803 F.3d 450 (9th Cir. 2015) ........................................................................... 8

*Lugosi v. Universal Pictures*,
25 Cal. 3d 813 (1979) ................................................................................. 2, 7

*MGIC Indem. Corp. v. Weisman*,
803 F.2d 500 (9th Cir. 1986) ........................................................................... 8

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,
692 F.3d 983 (9th Cir. 2012) .................................................................. 2, 8, 9

*New Kids on the Block v. News Am. Publ'g., Inc.*,
971 F.2d 302 (9th Cir. 1992) .................................................................. 16, 17

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

CASES

*People v. McKale*,
   25 Cal. 3d 626 (1979) ........................................................ 12

*SmileCare Dental Grp. v. Delta Dental Plan of Cal. Inc.*,
   88 F.3d 780 (9th Cir. 1996) ............................................ 6, 10

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ............................................. 8

*Toho Co., Ltd. v. William Morrow & Co., Inc.*,
   33 F. Supp. 2d 1206 (C.D. Cal. 1998) ................................. 18

*United States v. Paulson*,
   204 F. Supp. 3d 1102, 1108 (S.D. Cal. 2016) ...................... 8

*Waits v. Frito-Lay*,
   978 F.2d 1093 (9th Cir. 1992), *abrogated by Lexmark Int'l, Inc. v.*
   *Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) ............ 2, 13

*White v. Samsung Electronics America, Inc.*,
   971 F.2d 1395 (9th Cir. 1992) .......................................... 13

STATUTES

California Business and Professions Code section 17200 ................................ passim

California Civil Code Section 946 ........................................................ 11

California Civil Code Section 990 ...................................................... 7, 11

California Civil Code Section 3344.1 .................................................... passim

Illinois Publicity Act, 765 Ill. Comp. Stat. 1075, *et seq* .................. 2, 10, 11

The Lanham Act, 15 U.S.C. §§ 1051, et seq. ........................................ passim

The Lanham Act, 15 U.S.C. section 1125(a) ...................................... 4, 13

RULES

Fed. R. Civ. Proc. 12(b)(6) ................................................................ 6

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

3   Plaintiff Make Him Smile, Inc. ("Plaintiff") is the alleged successor-in-
4   interest to the intellectual property rights of deceased comedian Chris Farley, the so
5   called "Farley IP."  (Complaint, ECF No. 1 ("Compl."), ¶¶ 1, 13).  According to
6   Plaintiff, Chris Farley was overweight "his entire adult life," "spent his entire career
7   building, then capitalizing on his unique brand of 'fat guy' humor and acting style"
8   and died weighing 400 pounds in 1997 at the age of 33.  (*Id.*, ¶ 16).  Nearly twenty
9   years after his death, in June 2017, Plaintiff filed a registration with the California
10  Secretary of State purporting to be the "successor-in-interest" to Chris Farley's
11  right of publicity under California Civil Code Section 3344.1.  (*See* Request for
12  Judicial Notice ("RJN"), Ex. D).[1]

13  Just a few months after registration, Plaintiff filed suit against Defendant
14  Trek Bicycle Corporation ("Trek"), a Wisconsin bicycle company.  One of the
15  many products sold by Trek is a performance bike called a "fat bike," an industry
16  term for a type off-road bicycle with wider chassis and tires, making it more agile
17  and adept at traversing unpaved terrain.  (*Id.* ¶ 10).  Trek calls its "fat bike" model
18  "Farley."  (*Id.*).  In its Complaint, Plaintiff claims that Trek's selection of the name
19  "Farley" infringes Plaintiff's purported "Farley IP."  (*Id.*, ¶¶ 25-30).  Importantly,
20  Plaintiff does not allege Trek used the name "Chris Farley," Chris Farley's likeness,
21  or any other distinctive attribute of Chris Farley on or in connection with the sale of
22  these bikes.  Instead, Plaintiff merely alleges that Trek selected "Farley" as a
23  "hook" to associate with Chris Farley.  (*Id.*, ¶ 25).  This is insufficient as a matter of

24
---

25  [1] Although Plaintiff makes conclusory allegations regarding its ownership of
26  "Farley IP," the Complaint lacks factual allegations supporting the existence or its
    exploitation of any such intellectual property rights.  Plaintiff does not disclose that,
27  or explain why, it waited *nearly twenty years* after Chris Farley's death to file its
    California registration in June 2017.  In any event, as explained below, the filing of
28  a registration under Section 3344.1 does not create any intellectual property rights.

law.  Even assuming, as the Court must on a motion to dismiss, that Trek named its fat bike model "Farley" as a nod to Chris Farley, Plaintiff has not and cannot allege a cognizable claim for at least three reasons.

First, Plaintiff's California right of publicity claims fail because Chris Farley had no such rights to devise or assign.  (*See id.*, ¶¶ 38–56 (asserting claims under the common law and Civil Code section 3344.1)).  In no event can Plaintiff maintain a claim based on Chris Farley's alleged California common law right of publicity because it is simply not descendible.  *See Lugosi v. Universal Pictures*, 25 Cal. 3d 813 (1979).  Plaintiff also cannot maintain a claim under Civil Code section 3344.1—California's statutory, descendible right of publicity—because that statutory right is only available to personalities domiciled in California at the time of death.  *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1149 (9th Cir. 2002).  Plaintiff's conclusory allegation that Chris Farley died a California domiciliary is directly contradicted by judicially noticeable Illinois probate records in which Chris Farley's parents declare under oath that he died as a resident of Chicago, Cook County, Illinois.  Not only should Plaintiff's contradictory allegations be disregarded, but Plaintiff is also judicially estopped from asserting a Section 3344.1 claim.[2]  *See Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983 (9th Cir. 2012).  Without that claim, Plaintiff's derivative California Unfair Competition Law claim necessarily falls, as well.  (*See* Compl., ¶¶ 67–71).

Second, Plaintiff's false endorsement claim under the Lanham Act cannot survive this motion because Trek is not alleged to have used a distinctive attribute of Chris Farley's identity.  *See Waits v. Frito-Lay*, 978 F.2d 1093 (9th Cir. 1992), *abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014).  Plaintiff alleges only that Trek used the name "Farley" in connection

---

[2] Illinois's statutory descendible right of publicity was enacted after Chris Farley's death and is expressly not retroactive.  *See* 765 Ill. Comp. Stat. 1075, *et seq.*

with its bike model.  Plaintiff does not allege that Trek used the name "Chris Farley" or any other uniquely distinguishing characteristic, such as his likeness or alleged "fat guy" character, on or in connection with the sale of such bikes. Plaintiff also does not allege that it or Chris Farley ever used the name "Farley" as a source identifier or that there is an association between Chris Farley and performance bikes.  Plaintiff's conclusory allegation that the surname "Farley" is synonymous with Chris Farley is insufficient and also negated by its allegation that his "friends and colleagues"—not his fans or the consuming public—called him "Farley."

Third, the Lanham Act claim is also defeated by the nominative fair use defense.  The nominative fair use analysis is appropriate where, as here, a defendant is alleged to have used the plaintiff's alleged mark ("Farley") to describe the plaintiff's alleged product (Chris Farley), even if the defendant's ultimate goal is to describe its own product (Trek bikes).  *See Cairns*, 292 F.3d at 1151.  Even assuming for the purposes of this motion that "Farley" was a distinctive mark identifying Chris Farley and that Trek selected the name in reference to him, Trek's alleged use would constitute a nominative fair use because:  (1) Chris Farley is not readily identifiable without the use of at least his name; (2) Trek is alleged to have used only so much of the alleged mark as reasonably necessary to identify Chris Farley (only his last name); and (3) Plaintiff has not alleged that Trek did anything that would, in conjunction with the use of the alleged Farley mark, suggest sponsorship or endorsement.  Trek's conduct would thus not implicate a source-identifying purpose and therefore is not actionable.

Finally, since amendment would be futile, the Court should dismiss the entire Complaint with prejudice.

## II.   SUMMARY OF COMPLAINT

On September 11, 2017, Plaintiff commenced this action by filing its complaint (the "Complaint") in the California Superior Court, County of Los

Angeles, Case No. BC675506. (Dkt. 1-1). Trek removed the action to this Court on September 27, 2017. (Dkt. 1). The Complaint purports to allege four claims against Trek for: (1) California Common Law Misappropriation; (2) Violation of California Civil Code section 3344.1; (3) False Endorsement in Violation of Lanham Act, 15 U.S.C. section 1125(a); and (4) Unfair Business Practices in Violation of California Business and Professions Code section 17200 (the "UCL" or "Section 17200"). (*Id.*). The allegations are summarized below.

### 1. **Chris Farley.**

Chris Farley was a comedian who portrayed "fat and loud" characters on NBC's *Saturday Night Live*, and in films such as *Tommy Boy*, *Black Sheep*, and *Beverly Hills Ninja*. (Compl., ¶ 14). According to Plaintiff, "[Chris] Farley developed and refined an unapologetic Midwestern 'fat-guy' persona. When advised by doctors to lose weight throughout the last years of his life, he had legitimate concerns that doing so could jeopardize his ability to get roles and dilute his brand as a comedian." (*Id.*, ¶ 19). Chris Farley died at the age of 33, on December 18, 1997. (*Id.*, ¶¶ 14, 16). Chris Farley was overweight "his entire adult life," and "weighed approximately 400 pounds" at death. (*Id.*, ¶¶ 1, 16).

### 2. **Plaintiff and the "Farley IP."**

Plaintiff claims to be "the legal successor-in-interest, as such term is defined under California law, to the estate of, and the property rights formerly owned by, Chris Farley, who his friends and colleagues simply referred to as 'Farley' ('Farley')." (Compl., ¶¶ 1, 12). Yet, Plaintiff waited until June 20, 2017, nearly twenty years after Chris Farley's death and just months before filing this lawsuit, to file a Registration of Claim as Successor-In-Interest (Civil Code section 3344.1) with the California Secretary of State. (*See id.*, ¶ 13; *see also* RJN, Ex. D).

Plaintiff does not allege that it or anyone else holds a registered trademark in the name "Chris Farley" let alone the surname "Farley." Nonetheless, Plaintiff alleges it is in the business of exploiting or licensing to third parties the rights to use

Defendant Trek Bicycle Corporation's
Notice and Motion to Dismiss Complaint

Chris Farley's "name, likeness, image, voice, persona, signature, and other intellectual property comprising [Chris] Farley's personal attributes," defined as "the 'Farley IP'." (*Id*.).  Plaintiff alleges that the "Farley IP" is recognized instantly by the general public and have substantial commercial value due to [Chris] Farley's carefully crafting his identity as a comedian when he was alive, and the third parties' and Plaintiff's posthumous authorized publication, marketing, and other exploitation of [the] Farley IP." (*Id.*, ¶ 15).  According to Plaintiff, "the word 'Farley' has become iconic and narrowly associated with [Chris] Farley's individual identity, comedic brand, and his loud, Midwestern, 'fat-guy' common man roots in Madison, Wisconsin." (*Id*., ¶ 20).  Plaintiff also concludes that a "specific and targeted generation of consumers that tend to purchase Fat Bikes," associate Chris Farley with "'loud,' 'fat,' [and] 'Midwestern.'" (*Id*., ¶ 29).

### 3.  Defendant and Its "Farley" Bike Model.

Defendant Trek is "the largest bicycle manufacturer in North America," and "one of the world's five largest bicycle manufacturers." (Compl., ¶ 9).  Among the many products that Trek designs, manufactures, and sells is a model of "fat bikes." In the industry, "fat bikes" generically refer to bikes with "attributes that make them more agile and adept at traversing unpaved terrains." (*Id*., ¶ 10).

According to Plaintiff, Trek's fat bikes prominently feature the name "Farley." (*Id*., ¶ 10, 11).  Plaintiff alleges that Trek selected the name to create instant name recognition between its fat bike products and Chris Farley—an "advertising and branding 'hook' to help launch and promote sales of each of its various Fat Bike products" and to "welcome and encourage potential customers and the bike industry generally to immediately associate . . . Trek's Fat Bikes with one of their favorite famous 'fat' and 'loud' comedians." (*Id*., ¶¶ 25, 27, 28).

Finally, Plaintiff alleges in conclusory terms that "Trek's top level executives," have spoken and cooperated with the writers of bicycle trade articles and product reviews, and have never sought to correct the record, "which routinely

include[s] statements that the Farley Branded Products were . . . inspired by, and named after, [Chris] Farley." (*Id.*, ¶ 33). Plaintiff also claims that it suffered damages due to the fact that Trek recalled about 2,600 Trek Farley bicycles due to a potential fall hazard to the rider. (*Id.*, ¶ 35).

### III.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007). The allegations must "plausibly suggest[]," and not merely be consistent with, the claimed wrongful conduct. *Id.*, at 557. The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory" or (2) "insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal. Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted).

Factual allegations are assumed true, but the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "(t)hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is improper to assume "the (plaintiff) can prove facts that it has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

### IV.   ARGUMENT

**A.   Plaintiff's Claims for Violation of California's Rights of Publicity Necessarily Fail Because the Common Law Right Is Not Descendible and the Statutory Right under Civil Code section 3344.1 Is Not Available to Chris Farley Who Died an Illinois Domiciliary.**

Plaintiff attempts to allege two right of publicity claims under California law—violation of California's common law right of publicity (Compl., ¶¶ 38–47)

and Civil Code section 3344.1 (*id.*, ¶¶ 49–56).  Both claims fail as a matter of law because the common law right is not descendible and Chris Farley had no statutory publicity right having died domiciled in Illinois, not California.

### 1.    Chris Farley Does Not Have a Common Law Right of Publicity Under California Law Because It Is Not Descendible.

Plaintiff cannot assert a claim based on Chris Farley's California common law right of publicity because it is not descendible.

California's statutory right of publicity originated with the enactment of Civil Code section 3344, which authorized the recovery of damages by any living person whose name, photograph, or likeness has been used for commercial purposes without his or her consent.  *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387 (2001).  In *Lugosi v. Universal Pictures*, 25 Cal. 3d 813 (1979), the California Supreme Court recognized a complementary common law right of publicity, but held that since it is derived from the law of privacy, it is not freely transferable or descendible and expires by operation of law at death.  *Id.* at 824.  In response, the California legislature enacted Civil Code section 990 creating a descendible right of publicity, which the legislature subsequently amended and renamed Section 3344.1.

In *Lugosi*, the California Supreme Court made clear that there is no descendible common law right of publicity in California.   Therefore, Plaintiff cannot assert a claim based on Chris Farley's post-mortem common law right of publicity and its claim attempting to do so fails as a matter of law.

### 2.    Plaintiff Cannot Assert a Section 3344.1 Claim Because It Is Only Available to Personalities Who Die Domiciled in California, and Chris Farley Died Domiciled in Illinois.

Plaintiff also cannot assert a claim under California Civil Code Section 3344.1 because Chris Farley died as an Illinois domiciliary.

Section 3344.1 prohibits the use of a deceased personality's name, voice, signature, photograph or likeness on or in products, merchandise or goods, or for

1   the purpose of selling, or soliciting purchases of products, merchandise, goods or

2   services without prior consent.  However, Section 3344.1 is only available to those

3   personalities who die while domiciled in California.  *Cairns*, 292 F.3d 1139

4   (holding Princess Diana died a domiciliary of Great Britain and therefore could not

5   assert a claim under Section 3344.1); *Milton H. Greene Archives, Inc.*, 692 F.3d

6   983 (holding Marilyn Monroe died domiciled in New York and there is no

7   descendible right of publicity under New York law).

8       In an attempt to avail itself of Section 3344.1, Plaintiff alleges that Chris

9   Farley "was domiciled in the State of California, County of Los Angeles" at the

10  time of his death.  (Compl., ¶ 14).  However, the Court should disregard this

11  allegation because it is directly contradicted by Chris Farley's judicially noticeable

12  Illinois probate records.  "The Court may disregard allegations in a complaint that

13  are contradicted by matters properly subject to judicial notice."  *Headspace Int'l,*

14  *LLC v. New Gen Agric. Servs., LLC*, No. CV-16-3917-RGK (GJSx), 2016 WL

15  9275781, at *2 (C.D. Cal. Nov. 15, 2016) (Klausner, J.); *Steckman v. Hart Brewing,*

16  *Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).  Public records, such as filings in

17  probate court proceedings, are routinely considered for this purpose.[3]  *See, e.g.*, *In*

18  *re Tower Park Properties, LLC*, 803 F.3d 450, 452 (9th Cir. 2015) (taking judicial

19  notice of documents filed in probate court proceedings); *United States v. Paulson*,

20  204 F. Supp. 3d 1102, 1108 (S.D. Cal. 2016) (same).

21      Chris Farley's Illinois probate records establish that he was domiciled in

22  Illinois at the time of death.  On January 21, 2008, Chris Farley's mother, Mary

23  Anne Farley initiated the Illinois probate by filing a Petition for Letters of

24

25  ─────────────

[3] It is well established that on a motion to dismiss, a court can consider documents

26  that may be judicially noticed such as documents in the public record.  *MGIC*

27  *Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (noting that a district

    court may take "judicial notice of matters of public record outside the pleadings"

28  when determining whether a complaint fails to state a claim).

1   Administration in the Circuit Court of the Cook County, Illinois County

2   Department − Probate Division. (RJN, Ex. A). Mary Anne Farley also served as

3   the CEO of Plaintiff, and remains a director. (RJN, Ex. E). Under penalty of

4   perjury, Ms. Farley's Petition declared: "CHRISTOPHER C. FARLEY, whose

5   place of residence at the time of death was 875 North Michigan Avenue, Chicago,

6   Cook County, Illinois, died DECEMBER 18, 1997, at Chicago, Illinois leaving no

7   will." (RJN, Ex. A) The Petition further stated that the approximate value of the

8   estate is $5,000,000 in personal property and $0 in real property or annual income

9   from real estate. (*Id.*) Pursuant to the Petition, Chris Farley's father, Thomas J.

10   Farley, was appointed as the independent administrator of his estate and he also

11   declared under penalty of perjury that Chris Farley "died a resident of Cook

12   County, Illinois on December 18, 1997 at the age of 33 years." (*See* RJN, Ex. B).

13      The terms "residence" and "domicile" are used synonymously under the

14   Illinois Probate Act. *In re Estate of Elson*, 120 Ill. App. 3d 649, 653–54 (1983).

15   Moreover, since the Petition states that Chris Farley had no Illinois real property at

16   the time of death, he necessarily had to be an Illinois domiciliary in order for the

17   probate to be administered in Illinois. *See id.* ("An Illinois circuit court in probate

18   may exercise jurisdiction over the estate of a decedent either when the deceased

19   was domiciled in Illinois or at the time of her death owned property in this State.").

20   Thus, the sworn statements of Chris Farley's parents as probate petitioner and

21   administrator establish that Chris Farley died as a domiciliary of Illinois. Plaintiff

22   is therefore judicially estopped from inconsistently asserting that Chris Farley died

23   a domiciliary of California in order to assert a Section 3344.1 claim. *See Milton H.*

24   *Greene Archives, Inc.*, 692 F.3d at 1000 (judicially estopped Marilyn Monroe, LLC

25   and its licensee from pursuing Section 3344.1 rights because her representatives

26   previously took the position that she was domiciled in New York at death).

27      Plaintiff's Section 3344.1 claim is not saved by the fact that it registered a

28   claim of rights as successor-in-interest to Chris Farley's property rights with the

1   California Secretary of State.  (*See* Compl., ¶13).  The filing of a registration does

2   not create any rights where none exist.  Rather, subsection (f) explains that it is a

3   prerequisite to recovering damages and results in a public record of the filer's

4   claim.  Indeed, the Secretary of State's database of such filings expressly disclaims

5   the "accuracy, adequacy, completeness, legality, reliability or usefulness of any

6   information so provided" and makes clear it posts the filings on an "as is" basis.

7   (RJN, Ex. C.)  Curiously, Plaintiff's Complaint does not disclose that it filed the

8   Section 3344.1 registration on June 20, 2017, nearly twenty years after Chris

9   Farley's death and just a few months before filing its Complaint.  (RJN, Ex. D).  In

10  any event, the filing of this registration does not change the judicially noticeable

11  fact that Chris Farley died a domiciliary of Illinois and therefore had no Section

12  3344.1 rights.

13         3.      **Amendment Would Be Futile Because Chris Farley Also Has No**

14                 **Rights of Publicity Under Illinois Law.**

15        Plaintiff cannot cure its right of publicity claims because Chris Farley did not

16  have any post-mortem right of publicity under Illinois law.

17        At the time Chris Farley died, Illinois did not recognize a descendible right of

18  publicity.  Illinois' right of publicity statute, the Right of Publicity Act (the "Illinois

19  Act"), is codified at 765 Ill. Comp. Stat. 1075 and went into effect on January 1,

20  1999.  Prior to enactment, there was no Illinois law that provided such a right after

21  death.  *Carlson v. Del Pub. Co.*, 65 Ill. App. 2d 209 (1965).  The Illinois Act

22  created an individual's right of publicity (*see* 765 Ill. Comp. Stat. 1075/10), but

23  explicitly provides that it does not retroactively create such a right for individuals

24  who died prior to January 1, 1999.  *Id.*, § 35 (stating "[t]his Act applies to acts or

25  events that take place after the effective date of this Act"); § 30 (requiring written

26  consent for use of an individual's identity for commercial purposes only if the

27  individual died after the effective date of the Act).  Here, Plaintiff alleges,

28  consistent with the Illinois probate records, that Chris Farley died on December 18,

1997.  Thus, Chris Farley did not have any Illinois post-mortem right of publicity to devise or assign.  *See* 765 Ill. Comp. Stat. 1075, *et seq.*

Similarly, in *Cairns v. Franklin Mint Co.*, the Ninth Circuit held that the executors of the estate of Princess Diana and the trustees of her memorial fund had no claim under California Civil Code section 990 (Section 3344.1's predecessor) because she died as a domiciliary of a foreign jurisdiction that did not grant or recognize a descendible right of publicity.  292 F.3d at 1149.  The Ninth Circuit examined the legislative history and affirmed the district court's determination that California's default personal property choice of law provision, Civil Code section 946, applied to the post-mortem right of publicity and required the application of the law of the jurisdiction where the personality died.  Since Great Britain did not recognize a post-mortem right of publicity, Princess Diana's estate did not include a right of publicity and the claim failed.  *Id.*

Likewise in this case, because Chris Farley died domiciled in Illinois, the law of that state controls.  He passed away on December 18, 1997, before the Illinois legislature enacted the Illinois Act on January 1, 1999, so Chris Farley never had a post-mortem right of publicity and, accordingly, could assign no such right to Plaintiff.  Like Princess Diana's successors-in-interest, Plaintiff's Section 3344.1 claim fails as a matter of law and must be dismissed without leave to amend.

## B.  Plaintiff's Unfair Competition Claim Under Section 17200 Falls with Its Defective Statutory Right of Publicity Claim.

Because Plaintiff's claim under California's Section 17200 is predicated upon its defective California statutory right of publicity claim, it also fails and should be dismissed.  (Compl., ¶¶ 67–71).

Unfair competition in California is "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." California Business and Professions Code § 17200.[4]  Claims under the "unlawful"

---

[4] In order to have standing to assert a claim for violation of the UCL, Plaintiff must

1   prong of the UCL "borrow" from other statutes and are predicated upon

2   independent violations of law. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,

3   20 Cal. 4th 163, 180 (1999). Thus, to plead a claim under this prong, Plaintiff must

4   allege facts sufficient to demonstrate a violation of an underlying law. *People v.*

5   *McKale*, 25 Cal. 3d 626, 635 (1979).

6        In this case, the Complaint defectively alleges a violation under the

7   "unlawful" prong of Section 17200, based on Trek's purported violation of Section

8   3344.1. For the reasons described above, Plaintiff's Section 3344.1 claim fails as a

9   matter of law. (Compl., ¶ 68). Without alleging any additional facts to supplement

10   or differentiate this claim from its flawed statutory claim, Plaintiff charges that Trek

11   misappropriated Plaintiff's purported "Farley IP," which "constitute[s] wrongful

12   conduct and unlawful business practices, including conduct that violates California

13   Civil Code § 3344.1." (*Id.*) But because Plaintiff's Section 3344.1 claim fails as a

14   matter of law—owing to the fact that Illinois law dictates that Chris Farley had no

15   post-mortem right of publicity to assign to Plaintiff—so too must its claim under

16   the "unlawful" prong of the UCL, which is predicated on the same flawed analysis.

17   **C.   Plaintiff's Lanham Act False Endorsement Claim Fails Because Plaintiff**
     **Does Not Allege the Requisite Use of a Distinctive Attribute, and, Even if**
18   **It Had, It Would Amount to a Nominative Fair Use.**

19        Finally, Plaintiff's claim for false endorsement under the Lanham Act fails at

20   the pleadings stage for two principal reasons. (*See* Compl., ¶¶ 57–66). First,

21   Plaintiff fails to plead an essential element of this claim—specifically, that Trek

22   used a distinctive attribute of Chris Farley. Second, even assuming that Plaintiff

23   had standing to assert a claim under the Lanham Act, and taking the allegations of

24   the Complaint as true for purposes of this motion, the conduct alleged of Trek is

25   non-infringing nominative fair use.

26   _____

27   allege that it suffered an injury in fact and lost money or property as a result of an
     unfair, unlawful or fraudulent business practice. *See, e.g.*, *In re Tobacco II Cases*,
28   46 Cal. 4th 298, 315 (2009).

1          1.      **Plaintiff Fails to Allege that Trek Used a Distinctive Attribute of Chris Farley.**

Plaintiff's Lanham Act claim is insufficient as a matter of law because the name "Farley" is not a distinctive attribute of Chris Farley.

The Ninth Circuit recognizes a false endorsement claim under Section 43(a) of the Lanham Act, 15 U.S.C. section 1125(a), for misuse of a celebrity persona. *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1068 (9th Cir. 2015) (owner of Bob Marley's property rights sued over use of his image on competing t-shirts and other merchandise).  In *Waits v. Frito-Lay, Inc.*, the Ninth Circuit held as a matter of first impression "that a celebrity whose endorsement of a product is implied through the imitation of a distinctive attribute of the celebrity's identity, has standing to sue for false endorsement under section 43(a) of the Lanham Act."  978 F.2d 1093, 1110 (9th Cir. 1992), *abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014).  *Waits* has been followed in cases such as *White v. Samsung Electronics America, Inc.*, 971 F.2d 1395, 1400–01 (9th Cir. 1992), where the court allowed Vanna White, the hostess of "Wheel of Fortune," to bring a claim for use of a look-alike caricature robot endorsing the defendant's product in an advertisement for VCRs.[5]

The *sine qua non* of a celebrity false endorsement claim is defendant's use or imitation of a distinctive attribute of that celebrity.  Here, Plaintiff is unable to identify any such distinctive attribute that could support its claim.  Plaintiff does not allege that Trek used the name "Chris Farley," his likeness, or anything unique to

---

[5] In *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407 (9th Cir. 1996), plaintiff basketball legend Kareem Abdul-Jabbar brought a Lanham Act false endorsement claim based on the use of his full given name "Lew Alcindor" and a unique statistic about his college career as the answer to a trivia question in a car commercial.  The Ninth Circuit concluded that it was "far from clear" that it was a violation, but rejected defendants' abandonment defense and held that there was a question of fact for the jury as to whether defendants were entitled to a fair use defense.

his career.  Plaintiff also does not allege that any attribute of Chris Farley appears on Trek's bikes or in advertising in a manner that suggests Chris Farley's endorsement.   That explains why Plaintiff chose not to include any visual representations of Trek's fat bike or promotional material in its Complaint.

Instead, the best Plaintiff can muster is to vaguely allege that Trek, a Wisconsin company, named its fat bike model "Farley" as a "hook" to associate with Chris Farley and his "loud, fat and Midwestern" persona.  (*See* Compl., ¶¶ 25-30).  Plaintiff pins its Lanham Act claim on the premise that the surname "Farley" has become a distinct attribute of Chris Farley.  Yet, Plaintiff does not, and cannot, allege even one instance where Chris Farley or Plaintiff used "Farley" as a source identifier for Chris Farley's persona or services.   (*See generally* Compl.).  Plaintiff's vague conclusion that "Farley" alone is "well-recognized, distinctive and unique and singularly associated with [Chris] Farley" is not corroborated by any factual allegations whatsoever.  (*See id.*, ¶ 58)  The Court is therefore not required to, and should not, accept it as true at this stage.  *See Iqbal*, 556 U.S. at 678.  In fact, Plaintiff's conclusory allegation is belied by its own concession that Chris Farley was referred to as "Farley" by his "friends and colleagues." (Compl., ¶ 12).

Further, Plaintiff's allegation that the word "Farley" alone is "distinctive" and "singularly associated with [Chris] Farley" is also directly contradicted by the judicially noticeable public records from Trek's registration of the mark with the United States Patent and Trademark Office ("U.S.P.T.O.").  (*See* RJN, Ex. F).  In 2013, Trek filed a trademark application for the word mark "Farley" to be used on bikes and related products.  The U.S.P.T.O. refused registration on the Principal Register "because the applied-for mark is primarily a surname."  (*Id.*)  As support, the U.S.P.T.O. stated that FARLEY is a common surname in the United States, appearing 11,172 times in a nationwide telephone directory, and gave examples of comedian Chris Farley; Christopher John Farley, a senior writer and pop music critic for Time Magazine; and Mark Farley, the head football coach at the

University of Northern Iowa.   (*Id.*)   Also considering there is no dictionary definition of "Farley," the U.S.P.T.O. concluded: "This is strong evidence that the term FARLEY is primarily understood as merely a surname."   (*Id.*)   As a result, Trek registered "Farley" on the Supplemental Register.

Accordingly, Plaintiff has not alleged necessary facts that would allow it to bring this Lanham Act claim, and based on the Complaint's current allegations, it is improper to assume that it can prove facts that it has not alleged.  *See Ass'n Gen. Contractors of Cal., Inc.*, 459 U.S. at 526.

### 2.   The Nominative Fair Use Defense Defeats Plaintiff's False Designation of Origin Claim.

Plaintiff's Lanham Act claim is also fatally flawed because even if Trek did what Plaintiff alleges—name its fat bike model "Farley" as an homage to Chris Farley—that conduct would amount to nothing more than a nominative fair use.

The nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product or service, even if the defendant's ultimate goal is to describe his own product.  *See Cairns*, 292 F.3d at 1151.   To establish a nominative fair use defense, a defendant must prove the following three elements: (1) the plaintiff's product or service in question must be one not readily identifiable without use of the trademark; (2) only so much of the mark or marks may be used as is reasonably necessary to identify the plaintiff's product or service; and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *See Adaptive Mktg. LLC v. Girard Gibbs LLP*, No. CV 09–04739 RGK (RCx), 2009 WL 8464168, at *3 (C.D. Cal. Oct. 9, 2009) (Klausner, J.) (citing *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1029–30 (9th Cir. 2004); *New Kids on the Block v. News Am. Publ'g., Inc.*, 971 F.2d 302, 308 (9th Cir.

1992)).  Within the Ninth Circuit, the nominative fair use defense is available at the pleadings stage and is applied to dispose of meritless claims at their incipiency.[6]

The seminal Ninth Circuit opinion applying nominative fair use in this context is *New Kids on the Block v. News American Publishing., Inc.*, 971 F.2d 302 (9th Cir. 1992).  Plaintiff musical group The New Kids on the Block ("New Kids") brought suit against two newspapers that conducted separate reader polls seeking to determine which member of the group was most popular.  The announcements asked readers to vote by placing a call to "900 numbers" for which the readers were charged.  New Kids alleged that these unauthorized polls implied their sponsorship, asserting a variety of Lanham Act claims.  The Ninth Circuit recognized that not all uses of a trademark serve source-identifying functions and therefore a nominative fair use of another's mark is not actionable.  *Id*. at 308.  Otherwise, "[m]uch useful social and commercial discourse would be all but impossible if speakers were under threat of an infringement lawsuit every time they made reference to a person, company or product by using its trademark."  *Id*. at 307.

Applying the articulated test, the Ninth Circuit concluded that the first requirement was met because New Kids was not readily identifiable without the use of the group's name.  *Id*. at 308.  It concluded that it was no different than referring to "Chicago Bulls" rather than "the [then] two-time world champions" or "the professional basketball team from Chicago."  *Id*. at 306.  The Ninth Circuit also concluded that the second and third requirements were met because the references

---

[6] *See, e.g.*, *Adaptive Mktg. LLC*, 2009 WL 8464168 (dismissing Lanham Act claims and finding the defendants' use of the plaintiff's mark to be nominative fair use); *Beachbody, LLC v. Universal Nutrients, LLC*, No. CV 16-02015-R, 2016 WL 3912014, at *2 (C.D. Cal. July 18, 2016) (same); *1800 GET THIN, LLC v. Hiltzik*, No. CV11–00505 ODW (PJWx), 2011 WL 3206486, at *2–3 (C.D. Cal. July 25, 2011) (same); *Architectural Mailboxes, LLC v. Epoch Design, LLC*, No. 10cv974 DMS (CAB), 2011 WL 1630809, at *3–4 (S.D. Cal. Apr. 28, 2011) (same).

1  to New Kids were only to the extent necessary to identify them as the subject of the

2  polls, and the announcements did nothing to suggest sponsorship, such as using

3  their trademark.  *Id*. at 308-9.  The fact that the polls were "money-making

4  enterprises separate and apart from the newspapers' reporting businesses" did not

5  deprive the newspapers of this defense.  *Id*.

6      The nominative fair use doctrine as set forth in *New Kids* has been broadly

7  applied in the Ninth Circuit to defeat Lanham Act claims.  For example, in *Clark v.*

8  *America Online Inc.*, No. CV-98-5650 CAS (CWx), 2000 WL 33535712 (C.D. Cal.

9  Nov. 30, 2000), the court held that AOL's reference to "Dick Clark" in an

10  advertisement was a nominative fair use.    The lawsuit centered around a

11  promotional advertising mailer for AOL targeting members of the American

12  Association of Retired Persons ("AARP") with the hook:  "If you danced to the

13  Beatles, cruised in a Thunderbird, or tuned into Dick Clark, you have earned . . .

14  100 hours free [Internet service on AOL]."  *Id*. at *1  Plaintiffs alleged that AOL's

15  use of the service mark "Dick Clark" in conjunction with the "American

16  Bandstand"-type photograph violated the Lanham Act.  *Id*. at *2.  But the court

17  concluded that application of the *New Kids* test was appropriate because "this is a

18  case 'where the defendant uses a trademark ['Dick Clark'] to describe the plaintiff's

19  product [Dick Clark, the historical figure], rather than its own."  *Id*. at *5 (citing

20  *New Kids*, 971 F.2d 308).  The court held that the mailer satisfied the *New Kids* test

21  and dismissed the Lanham Act claim.

22      Plaintiff's allegation that Trek used "Farley" as the name of a product does

23  not alter the analysis.  For example, in *Cairns v. Franklin Mint Co.*, the Ninth

24  Circuit applied the *New Kids* nominative fair use defense to Franklin Mint's use of

25  the late Princess Diana's name and likeness on commercially sold jewelry, plates,

26  and dolls, and in advertisements for those products.  292 F.3d at 1144.  The first

27  element of the *New Kids* test—that the plaintiff's product must be one not readily

28  identifiable without use of the trademark—was satisfied because while "one might

refer to 'the English princess who died in a car crash in 1997,' . . . it's far simpler (and more likely to be understood) to refer to 'Princess Diana.'"  *Id.* at 1153.  The second element—that only so much of the mark may be used as is reasonably necessary to identify the plaintiff's product or service—was also satisfied because there was no allegation that Franklin Mint had "used any 'distinctive lettering' or any particular image of Princess Diana intimately associated with" the plaintiff.[7]  Finally, the third element, which requires that "the user [] do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder," was likewise met, mainly because none of Franklin Mint's advertisements for its Diana-related products claimed that the products were sponsored or endorsed by the plaintiff.  *Id.* at 1154.

The applicability of the nominative fair use defense is even stronger in this case than in *Cairns*.  Here, Plaintiff does not allege that Trek used the name "Chris Farley," Chris Farley's likeness or any other distinctive attribute.  (Compl., ¶¶ 25, 59).  Instead, Plaintiff only alleges that Trek named one of its bike models "Farley" in reference to Chris Farley.  Even if this was true, Trek's use of "Farley" would be a non-infringing nominative fair use.

First, Plaintiff's product or service in question—Chris Farley—is not readily identifiable without at least a reference to his name.  *See Cairns*, 292 F.3d at 1152–53.  Like the Franklin Mint's reference to Princess Diana, while one may refer to "the comedian and actor best known for his portrayal of 'fat' and 'loud' characters on NBC's *Saturday Night Live*, who died in 1997, weighing 400 pounds at the age

---

[7] *Cairns*, 292 F.3d at 1154 (distinguishing *Toho Co., Ltd. v. William Morrow & Co., Inc.*, 33 F. Supp. 2d 1206, 1209, 1211 (C.D. Cal. 1998) ("holding that a publisher who used the trademark "Godzilla" as the title of a book about the movie-monster by the same name used more of the mark than was "reasonably necessary" where "the title [was] written in the distinctive lettering style used by [the trademark holder] and its licensees in their merchandising activities").

of 33" (*See* Compl., ¶¶ 14, 16), it is far simpler (and more likely to be understood) to refer to Chris Farley.  *Id.*  Of course, here, Trek only referred to "Farley."

Second, only so much of the purported mark has been used as is reasonably necessary to identify the Plaintiff's product or service.  In *Cairns*, the Ninth Circuit acknowledged that what is "reasonably necessary to identity the plaintiff's product" differs from case to case, and distinguished cases like *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407 (9th Cir. 1996), where the defendant used the plaintiff's persona in advertising to call attention to its unrelated Oldsmobile Eighty-Eight.  *Cairns*, 292 F.3d at 1154.  In contrast, since the products in *Cairns* honored Princess Diana, Franklin Mint had to ensure that its customers understood the references and therefore it was "reasonably necessary" to have used the name "Princess Diana" and her likeness on and in advertising for the products.  *Id*.  Similarly here, Plaintiff alleges that Trek honored Chris Farley by naming its bike "Farley" based on their shared qualities of being "fat, loud, wide and Midwestern." (*See* Compl., ¶ 29).  Assuming that to be true, it would have been reasonably necessary for Trek to use his full name, but it only used "Farley."

Third, the Complaint does not allege that Trek did anything that would, in conjunction with the use of the purported mark, suggest any sponsorship or endorsement by Chris Farley or Plaintiff.  Trek's logo, a registered trademark, served the source-identifying function on all of its products at issue, and there are no factual allegations that Trek's advertisements have suggested that its Farley bikes are sponsored or endorsed by Chris Farley or Plaintiff.  *See id.* at 1154.

Because Trek satisfies each element of the *New Kids* test, any alleged use of Farley in connection with its fat bikes constitutes non-infringing nominative fair use and the Lanham Act claim should be dismissed.

## D.    Leave to Amend Is Not Warranted.

The allegations in the Complaint demonstrate that any further amendment would be futile.  A court may properly deny leave to amend where the amendment

Defendant Trek Bicycle Corporation's
Notice and Motion to Dismiss Complaint

1  would be futile.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Gordon v. City of*
2  *Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010).

3  ## V.    CONCLUSION

4      Chris Farley died in 1997 as a domiciliary of Illinois and therefore Plaintiff
5  does not have an enforceable right of publicity under California or Illinois law.
6  Since Plaintiff's Section 17200 is predicated on an alleged violation of Section
7  3344.1, it falls with it.  Plaintiff also cannot plausibly allege a false endorsement
8  claim because Trek did not use a distinctive attribute of Chris Farley in connection
9  with its line of fat bikes.  But even if it could, Trek's conduct would be a textbook
10  example of nominative fair use.  For these reasons, Defendant Trek Bicycle
11  Corporation respectfully requests that the Court dismiss Plaintiff's Complaint in its
12  entirety with prejudice.

13

14  DATED: November 13, 2017                    **PERKINS COIE** LLP

15

16                                              By: */s/ Michael B. Garfinkel*
                                                Michael B. Garfinkel
17                                              Oliver M. Gold

18                                              Attorneys for Defendant
                                                Trek Bicycle Corporation
19

20

21

22

23

24

25

26

27

28