Kirk Edward Schenck, Esq.   State Bar #: 173963
*Kulik, Gottesman, Siegel & Ware, LLP*
15303 Ventura Boulevard, 14th Floor
Los Angeles, California 91403
tel: 310-600-3800 email: kschenck@kgswlaw.com

Attorneys for:
Make Him Smile, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Make Him Smile, Inc., a California Corporation,<br><br>          Plaintiff,<br><br>    vs.<br><br>TREK BICYCLE CORPORATION, INC., a Wisconsin Corporation, and DOES 1 through 100, inclusive,<br><br>        Defendants. | **CASE NO:  2:17-cv-07136-RGK**<br><br>**PLAINTIFF MAKE HIM SMILE, INC.'S OPPOSITION TO DEFENDANT TREK BICYCLE CORPORATION'S MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12(B)(6)**<br><br>Hearing Date: January 8, 2017<br>Time: 9:30 am<br>Judge: Hon. R. Gary Klausner<br>Location: Edward R. Roybal Federal Bld.<br>255 East Temple Street, LA CA 90012 |

# TABLE OF CONTENTS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

### II.

### GENERAL FACTS & PROCEDURAL HISTORY

### III.

### STANDARDS OF REVIEW

*A.   Rule 8 Notice Pleading Standards.*

*B.   Defendant's Rule 12(b)(6) Burden.*

*C.   Defendant's Request for Judicial Notice.*

*D.   Leave to Amend Should Be Granted if Court Finds Any Element of Motion to Have Merit.*

### IV.

### ARGUMENT

*A.   Motion to Dismiss The Complaint's Second Claim Under California Civil Code §3344.1 Should Be Denied.*

    *1.   Plaintiff Has Pled Each Element of Civil Code §3344.1 in Accord with Rule 8.*

    *2.   Plaintiff is Not "Judicially Estopped" From Pleading Chris Farley's California Domiciliary at Death.*

    *3.   Domicile is a Factual Issue Uncontradicted by Defendant's Motion or its Exhibits.*

    *4.   Elson Case Relied On In Motion Is Both Irrelevant to Rule 12(b)(6) Motion and Mis-Cited.*

*B.   Motion to Dismiss The Complaint's Third Claim Under the Lanham Act's §43(a) Should Be Denied.*

    *1.   In Accord With Rule 8, Plaintiff Has Sufficiently Alleged Defendant's Use of*

a "*Distinctive Attribute*" *of Chris Farley's Persona.*

2.   *Defendant's Assertion Its Use of Chris Farley's Surname is Legally Incapable of Ever Causing Consumer Confusion or Violating Lanham Act 43(a) is Erroneous and Unsupported by Law.*

3.   *In this Case, Finding A "Distinctive Attribute" and "Potential for Confusion" Require Factual Inquiries Proper For a Rule 56 Summary Judgment Motion, not a Rule 12(b)(6) Motion.*

4.   *Defendant's "Nominative Fair Use Defense" Should Not Be Considered in A Rule 12(b)(6) Motion.*

5.   *Defendant Will Not Be Able to Use "Nominative Fair Use" Defense At Any Time Because Defendant Uses "Farley" as a Trade Name and Only To Describe Defendant's Property.*

C.   *Motion to Dismiss Fourth Claim Under Calif. Bus. and Prof. Code § 17200 Should Be Denied.*

**IV.**

**CONCLUSION**

# INDEX OF CASES

| Case Name | PAGE # |
|---|---|
| Allison v. California Adult Authority (9th Cir. 1969) 419 F.2d 822 | 5 |
| AMF Inc. v. Sleekcraft Boats (9th Cir. 1979) 599 F.2d 341 | 18, 23 |
| Anderson News, LLC v. American Media, Inc. (2nd Cir. 2012) 680 F.3d 162 | 16 |
| ASARCO, LLC. v. Union Pacific Railroad Co. (ASARCO) (9th Cir. 2014) 765 F.3d 999 | 21 |
| Ashcroft v. Igbal (Igbal) (2009) 556 US 662 | 4, 16 |
| Barker v. Riverside County Office of Education (9th Cir. 2009) 584 F.3d 821 | 16 |
| Bautsta v. Los Angeles County (9th Cir. 2000) 216 F.3d 837, | 4 |
| Bell Atlantic Corp. v. Twombly (Twombly)(2007) 550 US 544 | 4, 5, 16 |
| Braden v. Wal-Mart Stores, Inc. (8th Cir. 2009) 588 F.3d 585 | 16 |
| Braden v. Wal-Mart Stores, Inc. (8th Cir. 2009) *588 F.3d 585* | 16 |
| Broam v. Bogan (9th Cir. 2003) 320 F.3d 1023 | 5 |
| Brookfield Commc'n, Inc. v. W. Coast Entm't Corp (9th Cir.1999) 174 F.3d 1036 | 19 |
| Cairns v. Franklin Mint Co. (Cairns) (9th Cir. 2002) 292 F.3d 1139 | 22 |
| Collier v. Menzel (1985) 176 Cal.App.3d 24 | 10 |
| Conley v. Gibson (1957) 355 U.S. 41 | 5 |
| DeMiglio v. Mashore (1992) 4 Cal.App.4th 1260 | 10 |
| Doe v. United States (9th Cir. 2005) 419 F.3d 1058 | |
| Enesco Corp. v. Price / Costco, Inc. (9th Cir. 1998) 146 F.3d 1083 | 5 |
| Fenton v. Board of Directors (Fenton)(1984) 156 Cal.App.3d 1107 | 9 |
| Gaudin v. Remis (Guadin) (9th Cir. 2004) 379 F.3d 631 48 | 9 |

| Case Name | PAGE # |
|---|---|
| Gilligan v. Jamco Dev. Corp. (9th Cir. 1997) 108 F.3d 246 | 5 |
| Grey v. Evercore Restructuring, LLC (1st Cir. 2008) 544 F.3d 320 | 21 |
| Ileto v. Glock, Inc. (9th Cir. 2003) 349 F.3d 1191 | 5 |
| In Re Estate of Elson (Elson) (1983) 120 Ill.App.3d 649 | 11, 12 |
| JL Beverage Company, LLC v. Jim Beam Brands Co. (JL Beverage) (9th Cir. 2016) 828 F.3d 1098 | 18 |
| Kanter v. Warner–Lambert Co. (9th Cir. 2001) 265 F.3d 853 | 9 |
| Leatherman v. Tarreant County Narcotics Intelligence & Coordination Unit (1993) 507 US 163 | 4 |
| Lew v. Moss (Lew) (9th Cir.1986)  797 F.2d 747 | 8 |
| Lindy Pen Co. v. Bic Pen Corp. (9th Cir.1984) 725 F.2d 1240 | 23 |
| Lopez v. Smith (9th Cir. 2000) 203 F.3d 1122, 1127 | 6 |
| McCalden v. California Library Ass'n (9th Cir. 1990) 955 F.2d 1214 | 20 |
| Michelman v. Frye (1965) 238 Cal.App.2d 698 | 10 |
| Mississippi Band of Choctaw Indians v. Holyfield (1989) 490 U.S. 30 | 9 |
| OSU Student Alliance v. Ray (9th Cir. 2012) 699 F.3d 1053 | 6 |
| Peterson v. Grisham (10th Cir. 2010) 594 F.3d. 723 | 5 |
| Quacchia v. DaimlerChrysler Corp. (2004) 122 Cal.App.4th 1442 | 23 |
| Schreiber Distrib. Co. v. Serv-Well Furniture Co. (9th Cir.1986) 806 F.2d 1393 | 6 |
| Transgo, Inc. v. Ajac Transmission Parts Corp. (9th Cir.1990) 911 F.2d 363 | 23 |
| Waits v. Frito–Lay, Inc., 978 F.2d 1093 | 17 |
| Weible v. United States (9th Cir.1957) 244 F.2d 158 | 9 |

| Case Name | PAGE # |
|---|---|
| Wendt v. Host Int'l, Inc., 125 F.3d 806 | 17 |
| White v. Samsung Electronics America, Inc. (9th Cir. 1992) 971 F. 2d 1395 | 17, 18 |
| White v. Samsung Electronics America, Inc. (White) (9th Cir. 1992) 971 F.2d 1395 | 16 |
| Xechem, Inc. v. Bristol-Myers Squibb Co (Xechem) (7th Cir. 2004) 372 F.3d 899 | 20, 21 |

# INDEX OF STATUTES

| Statute | PAGE # |
|---|---|
| California Business and Professions Code §17200 | 1, 2, 4, 23 |
| California Civil Code §3344.1 | 1, 2, 10, 7-12 |
| California Election Code § 2027 | 8 |
| California Government Code §244(f) | 10 |
| Federal Rule of Civil Procedure 12(b)(1) | 7 |
| Federal Rule of Civil Procedure 12(b)(2) | 7 |
| Federal Rule of Civil Procedure 12(b)(6) | 1-23 |
| Federal Rule of Civil Procedure 8 | 1 |
| Federal Rule of Civil Procedure 8(a)(2) | 1 |
| Federal Rule of Evidence 201 | 6 |
| Lanham Act §43(a) (15 U.S.C. 1125(a)) | 1-3, 13-23 |
| Lanham Act 15 U.S.C. § 1115(b) | 23 |
| Lanham Act Sections 23-28, 15 U.S.C. §§ 1091-1096 | 23 |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiff Make Him Smile, Inc. ("Plaintiff") is the successor in interest to the estate of world-famous comedian Chris Farley.  In this case, Plaintiff seeks monetary damages and other relief from Trek Bicycle Company, Inc. ("Defendant") due to the Defendant's unauthorized use of Chris Farley's name as the trade name, and in the product "logo," for their line of so-called "Fat" Mountain Bikes (the "Fat Bikes") in violation of California Civil Code §3344.1 ("Civil Code §3344.1"), Lanham Act §43(a) (15 U.S.C. 1125(a)) ("Lanham Act §43(a)") *and* California Business and Professions Code §17200 ("Bus. Prof. Code §17200").

Where a Complaint alleges that a celebrity's name or persona has achieved worldwide recognition and is uniquely associated with the celebrity, and later one or more of the celebrity's identifying characteristics is incorporated into the brand name and product and packaging logo for a third-party product with the alleged potential for requisite confusion in the marketplace, no California or Federal court analyzing the laws applicable this case shoud granted a Rule 12(b)(6) Motion as a matter of law.  The issues in Defendant's Rule 12(b)(6) Motion (the "Motion") are clearly factual, and are for the trier of fact in this case to determine.

The Complaint in this action satisfies the pleading requirements of Federal Rule of Civil Procedure 8 ("Rule 8") by alleging all material facts required to support each of Plaintiff's claims with "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Defendant's Motion provides no grounds, legal or factual, for dismissing the Complaint's Second - Fourth Claims in Complaint as a matter of law.[1]

Defendant's Motion mis-cites and/or mis-applies various legal authorities to make the

---

[1]   Plaintiff concedes the Complaint's First Cause of Action for Common Law Misappropriation does not apply to the property rights of a deceased celebrity.  Accordingly, Plaintiff will stipulate to striking this Claim from the Complaint.

-1-

following four primary points attacking Plaintiff's pleading of its Second through Fourth Claims, none of which justify the granting of the Motion:

(1) Plaintiff's Civil Code §3344.1 Claim should be dismissed solely due the contents of two probate documents, Exhibits "A" and "B" to the Motion (which Defendant erroneously argues may be the subject to judicial notice in its Request for Judicial Notice) that cite Chris Farley's "residence" at time of death as Chicago, Illinois.  Defendant argues the Court must conclusively decree, as a matter of law, that Chris Farley died *domiciled* in Illinois, thereby obstructing Plaintiff's Civil Code §3344.1 Claim that requires a California domiciliary at time of death before a celebrity's successors can pursue a so-called "right of publicity" claim;

(2) Plaintiff has not sufficiently plead the name "Farley" is a "distinctive attribute" of Chris Farley to satisfy Rule 8's standards; and alternatively,

(3) As a matter of law, no set of facts can ever establish that Plaintiff can pursue a Lanham Act §43(a) Claim for the use of the surname Farley, regardless of how distinctive it may be or how uniquely associated with Chris Farley it has become, because it is impossible for a surname to comprise a "distinctive attribute" of Chris Farley's celebrity persona even though "name" is one of the articulated characteristics specifically listed in the text of Lanham Act §43(a); *and*

(4) As a matter of law — Defendant's use of the Farley mark amounts to a "nominative fair use."

None of Defendant's legal or factual arguments in the Motion satisfy its heavy burden on a Rule 12(b)(6) Motion to establish Plaintiff's Civil Code §3344.1 and Lanham Act §43(a) Claims are invalid *as matter of law* and, accordingly, the Motion should be denied with respect to these Claims.

Defendant's challenge to the Complaint's Fourth Claim for violation of Bus. Prof. Code §17200 fails if this Court denies the Motion regarding the Lanham Act §43(a) *or* the Civil Code §3344.1 Claims, as Defendant's only argument against this Bus. Prof. Code §17200 Claim is that it would lack a predicate "underlying law" violation if the Court were to grant

(without leave to amend) the Motion's challenge to Plaintiff's Civil Code §3344.1 and Lanham Act §43(a) Claims.

## II.

## GENERAL FACTS & PROCEDURAL HISTORY

On September 11, 2017, Plaintiff filed the Complaint in Los Angeles County Superior Court.  On September 27, 2017, Defendant filed its Notice of Removal of this action to the United States District Court — Central District of California.  After Plaintiff stipulated to grant Defendant an extension of time to reply to the Complaint, on November 13, 2017 Defendant filed the instant Rule 12(b)(6) Motion.

The Complaint is straightforward. In it, Plaintiff alleges that it has lawfully ascended to, and has the right to enforce, the property rights of Chris Farley, a world famous (and fat, loud and wild) comic celebrity whose last name is instantly recognizable by the general public as a distinctive attribute of Chris Farley's persona.  Plaintiff also alleges Defendant chose the word "Farley" as a trade name for its Fat Bikes (over all other trade names it could have chosen) specifically intending of creating confusion (and attention) in the marketplace by implying Plaintiff and Chris Farley were (a) involved and associated with, or otherwise related to, Defendant, and (b) endorsed and/or otherwise supported the act of selling the Fat Bikes with the trade name Farley.

In the Complaint, Plaintiff alleges in detail satisfying Rule 8's liberal "notice" pleading requirements (see more particularly Part IV(B)(1)(a)-(n) below) that Defendant Trek has been aggressively marketing and selling its Fat Bikes directly to consumers, the trade media, and bicycle distributors/retailers using the trade name "Farley," that the name Farley is a distinctive attribute of Chris Farley's celebrity persona well known around the world to the likely consumers for the Defendant's Fat Bikes, and that this use has in fact created, and continues to create, confusion as to Plaintiff's and Chris Farley's association with, and endorsement of, Defendant and Defendant's products in violation of: *Claim 2*: the Lanham Act (15 U.S.C. 1125(a); *Claim 3*: California Civil Code §3344.1; and *Claim 4*: California Business and Professions Code §17200.  For the reasons stated in this Opposition, the

Motion should be denied with respect to the Complaint's Second through Fourth Claims.

## III.

## STANDARDS OF REVIEW

### A. *Rule 8 Notice Pleading Standards.*

In *Bell Atlantic Corp. v. Twombly (Twombly)* (2007) 550 US 544, 555, the Supreme Court held Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."

The Federal Rules are designed to minimize disputes over pleading technicalities. See *Ashcroft v. Igbal (Igbal)* (2009) 556 US 662, 678. Except in the case of certain statutorily or judicially earmarked claims,[2] which do not include the claims in the Complaint, under Rule 8 a complaint is not required to pile on multiple supportive allegations to each of its required prima facie *material* factual allegations. Failure to allege every known fact supporting the material facts is not grounds to consider a Rule 12(b)(6) motion. Rather, federal courts and litigants "must rely on summary judgment and control of discovery to weed out unmeritorious claims …" *Leatherman v. Tarreant County Narcotics Intelligence & Coordination Unit* 507 US 163, 168-169 (1993); see also *Bautsa v. Los Angeles County* (9th Cir. 2000) 216 F.3d 837, 843. "The Federal Rules eliminated the cumbersome requirement that a claimant set forth *in detail* the facts upon which he bases his claim." *Twombly*, at 556 (emphasis in original).

### B. *Defendant's Rule 12(b)(6) Burden.*

In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true the allegations of the complaint and draw all reasonable inferences in the plaintiff's favor. *Doe v. United States,* 419 F.3d 1058, 1062 (9th Cir. 2005). Inquiry into the adequacy of the evidence is improper. *Enesco Corp. v. Price/Costco, Inc.* (9th Cir. 1998) 146 F.3d 1083, 1085. A court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff

---

[2] e.g., claims with heightened statutory pleading requirements such as Securities Laws or as delineated in Federal Rule 9.

can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson (1957)* 355 U.S. 41, 45-46.

Rule 12(b)(6) must be read in conjunction with Rule 8(a).  To plead its claims sufficiently, Plaintiff need only proffer "enough facts to state a claim to relief that is plausible on its face." *Twombly*, at 570. "A claim is facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 678.

The only issues raised by Defendant's Motion are whether the facts pleaded in the Complaint would, if established at trial after discovery, support a "plausible" claim for relief.  *Twombly, at* 556.  No matter how "improbable" the facts alleged may be, they must be accepted as true for the purposes of the Motion.  The *Twombly* Court insists: "A well pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable, and that a recovery is very remote and unlikely."  *Id*.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of the claims asserted in the complaint." *Ileto v. Glock, Inc.* (9th Cir. 2003) 349 F.3d 1191, 1199-200.  In evaluating a motion to dismiss, a court accepts the plaintiff's factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Shwarz v. United States* (9th Cir. 2000) 234 F.3d 428, 435.

Motions to dismiss for failure to state a claim under FRCP 12(b)(6) are viewed with disfavor and, accordingly, dismissals for failure to state a claim should rarely be granted. See *Gilligan v. Jamco Dev. Corp.* (9th Cir. 1997) 108 F.3d 246, 249, and generally *Broam v. Bogan* (9th Cir. 2003) 320 F.3d 1023, 1028-29.  Plaintiff's ability to prove its allegations, or possible difficulties in making such proof, is generally of no concern on a Rule 12(b)(6) motion, and the Court in ruling is not to weigh potential evidence the parties may present at trial.  See *Allison v. California Adult Authority* (9th Cir. 1969) 419 F.2d 822, 823 and *Peterson v. Grisham (10th Cir. 2010)* 594 F.3d. 723, 727.  In the Ninth Circuit, Plaintiff need not "make its case" against Defendant by pleading specific evidentiary facts supporting each element of a claim, and "[P]laintiff's failure to prove the case on the

pleadings does not warrant dismissal." *OSU Student Alliance v. Ray* (9th Cir, 2012) 699 F. 3d 1053, 1078.  Ultimately, to overcome a 12(b)(6) challenge, Plaintiff need only establish that the facts alleged, if proven true, and interpreted in its favor, would entitle it to relief.

### C.  Defendant's Request for Judicial Notice.

This Court may only consider the factual allegations in the Complaint itself. There is a limited and disfavored legal theory that the Court may consider a matter that is properly the subject of judicial notice pursuant to Fed. Rule Evid. 201. But, in accord with Plaintiff's concurrently filed Objections ("Objections to RJN") to Defendant's Request for Judicial Notice ("RJN"), Plaintiff respectfully requests this Court (a) rule that the RJN has not made a viable case for the Court's consideration of any of the six documents that are the subject of Defendant's RJN, and (b) exclude each such RJN Documents from analysis in this Motion.

### D.  Leave to Amend Should Be Granted if Court Finds Any Element of Motion to Have Merit.

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a).  This Court should only deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.* (9th Cir.1986) 806 F.2d 1393, 1401; see also *Lopez v. Smith* (9th Cir. 2000) 203 F.3d 1122, 1127.

Plaintiff argues herein that it has complied with Rule 8's liberal pleading requirements in alleging all required material factual elements of Claims Two through Four of the Complaint in "a short and plain statement." However, Plaintiff is willing and able to add additional allegations to the Complaint if and as directed by the Court.  If this Court is to grant any element of the Motion in connection with the Second through Fourth Claims in the Complaint for any reason, Plaintiff respectfully requests leave to file a First Amended Complaint to add additional facts to the allegations to resolve any outstanding factual or legal issues this Court may find exist.

# IV.

# ARGUMENT

**A.  *Motion to Dismiss The Complaint's Second Claim Under California Civil Code §3344.1 Should Be Denied.***

>    **1.  *Plaintiff Has Pled Each Element of Civil Code §3344.1 in Accord with Rule 8.***

In Paragraph 11 of the Complaint, Plaintiff pleads the following material fact that is a required element of the Civil Code §3344.1 claim: "At the time of his death, Farley was domiciled in the State of California, County of Los Angeles."

Defendant has no Federal Rule of Civil Procedure 12(b)(1) or (2) *jurisdictional* challenge to this claim that could require a factual inquiry at the pleading state into extrinsic evidence relating to Chris Farley's domicile at the time of his death.

Likewise, the Motion makes no assertion that Plaintiff has failed to provide enough factual evidence to support of the other elements the Complaint's Civil Code §3344.1 claim. The only argument Defendant offers against the Complaint's Civil Code §3344.1 claim is that Plaintiff is "judicially estopped" from pleading that Chris Farley was domiciled in California at the time of this death.

>    **2.  *Plaintiff is Not "Judicially Estopped" From Pleading Chris Farley's California Domiciliary at Death.***

In a misinterpretation of the applicable law and/or an attempt to mislead this Court, Defendant asks this Court to take judicial notice of the truth of facts contained in two documents comprising Exhibits "A" and "B" to the Motion — the authenticity or relevancy of which is not established by any declarant in the Motion or the RJN.

Defendant erroneously insists the Motion's Exhibit "A" — "Cook County, Illinois Petition for Letters of Administration," and Exhibit "B" — "Cook County, Illinois Affidavit of Heirship" conclusively establish as a matter of law that Chris Farley was *domiciled* in Illinois at the time of his death. Even if they were the proper subject of judicial notice

consideration[3], the Motion's Exhibits "A" and "B" do nothing to contradict or "judicially estop" (Motion at Page 9) as a matter of law the Complaint's material allegation of Chris Farley's domicile in California at the time of his death in connection with its pleading its Civil Code §3344.1 Claim.

Exhibits "A" and "B" do not contain, or even implied reference to, the word "domicile" and were filed by third parties who likely neither discussed the subject of *domicile* with Chris Farley, nor understood the legal definition of the word under California law. Illogically and somewhat disingenuously, Defendant asks this Court to conclude that because these form Exhibits list an Illinois *residence* at the time of Chris Farley's death, this fact establishes as a matter of law that Chris Farley chose to be *domiciled* in Illinois for all legal, financial, tax, professional and personal purposes at the time of this death. Not only is this not true, but Defendant's rationale is supported by the law in the Ninth Circuit, or in either California and Illinois. Exhibits "A" and "B" make no reference whatsoever to Chris Farley's intent to be domiciled anywhere, let alone in Illinois.

The factual issue of domicile can only be resolved by a complex factual analysis that is to take place in a Rule 56 summary judgement motion, or at trial.

### 3. Domicile is a Factual Issue Uncontradicted by Defendant's Motion or its Exhibits.

In the Motion, Defendant makes the unsustainable argument that "residency" equals "domicile" under both California and Illinois law. (Motion at pps. 7-9)

This argument is clearly misguided. While it is arguably proper for a trier of fact to at least consider Exhibits "A" and "B" to contradict an assertion that Plaintiff was a *resident* of California when he died, under California law, a person's residence is only one of many factors in determining the factual issue of domicile. See *Lew v. Moss (Lew)* (9th Cir.1986), 797 F.2d 747, 750. The determination of a person's domicile under California law requires far more than a factual identification of one residence. "The courts have held that the

---

[3] Please see Plaintiff's Objections to Defendant's Request for Judicial Notice, filed concurrently herewith and on which Plaintiff respectfully requests this Court rule prior to considering this Motion.

determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Id*.

For the purposes of a Rule 12(b)(6) motion, intent in the establishment of a domicile (or residence) is primarily one of fact unless directly contradicted by the face of the Complaint or by a fact contained in a *properly* authenticated and judicially noticed document.  This is not the case in the present Motion.

In California and the Ninth Circuit (analyzing California law) there is clearly a distinction between a person's residence, of which he may have one or more depending on many factors, and his domicile, of which he may only have one and which is established by analyzing many often contradictory factors.  While a current residence is one of many factors in determining domicile "[a] person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner– Lambert Co., (Kanter)* (9th Cir. 2001) 265 F.3d 853, 857 (citing *Lew, at* 749). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Kanter, at 857*.  The *Kanter* Court cites *Weible v. United States* (9th Cir.1957) 244 F.2d 158, 163, when it concludes:  "Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth."  "The traditional concept of domicile, as contrasted with mere residence, captures well the notion of permanence." *Gaudin v. Remis (Guadin)* (9th Cir. 2004) 379 F.3d 631, 637.  Domicile may be changed only by being physically present in a new jurisdiction with the intent to remain there. See *Mississippi Band of Choctaw Indians v. Holyfield (*1989) 490 U.S. 30, 48.

Thus the domicile analysis under California law includes a subjective as well as an objective factual component, although the subjective component may be established by

objective factors. See *Gaudin*, at 637; and see *Fenton v. Board of Directors (Fenton)*(1984) 156 Cal.App.3d 1107, 1116-17.  Domicile is the fixed habitation where one intends to stay if present, or intends to return if absent, and may, for voting purposes, even be the voter's vehicle. (*Collier v. Menzel* (1985) 176 Cal.App.3d 24, 31; see also Elec.Code, § 2027.) Domicile continues until a new domicile is acquired. (*DeMiglio v. Mashore (*1992) 4 Cal.App.4th 1260, 1268.) To change domiciles, there must be a union between act and intent, and intent to establish a domicile is primarily an issue of fact. (*Michelman v. Frye* (1965) 238 Cal.App.2d 698, 701; see Gov.Code, § 244, subd. (f).)

Ultimately, in connection with its Civil Code §3344.1 challenge, the Motion asks this Court to take judicial notice of two documents it wrongly claims "directly contradict" (Motion, pg. 8, ln. 11) as a matter of law Plaintiff's claim that Chris Farley died a California domiciliary.  However, these documents do not directly, or otherwise, contradict Plaintiff's allegation of Chris Farley's California domiciliary at the time of his death. In both of these documents, it is merely stated by third parties that Chris Farley was a "resident" of Illinois at the time of his death.  Even that fact may not be conclusive to the issue of residency once the parties have the right to conduct depositions of the persons who drafted and filed the documents comprising Exhibits A and B.

Finally, the Motion makes no argument that Plaintiff has failed to plead sufficient facts in the Complaint to satisfy Rule 8 notice pleading requirements regarding Chris Farley's California domiciliary at the time of his death.  Plaintiff can presume it has.[4]

Ultimately, neither the Motion's Exhibit "A" or "B," nor any other evidence or argument proffered in the Motion, contradicts as a matter of law Plaintiff's properly-pled allegation in the Complaint that Chris Farley was a California domicile at the time of his death.  The Motion fails to cite a single case or other authority offering legitimate support for its attack on Plaintiff's Civil Code §3344.1 Claim and no element of the Motion establishes that Chris Farley intended to be domiciled in Illinois, or any other place outside

---

[4] Should the Court require, Plaintiff is prepared to present multiple forms of admissible evidence that establishes that it was Chris Farley's intent for California to be his permanent domicile despite his transitory residence in other states (e.g., New York, Illinois, Wisconsin) from time to time.

California, at the time of this death.  Because this is required in order for this Court to grant this portion of the Motion and the primary case upon which Defendant hinges its argument is mis-cited (see analysis in section immediately below), Plaintiff respectfully requests this Court deny this element of the Motion.

**4.**  ***Elson Case, Relied On In Motion, Is Both Irrelevant to Rule 12(b)(6) Motion and Mis-Cited.***

Ironically, Defendant's Motion hinges its unsupportable "residency" equals "domicile" argument on a mis-citation (or misunderstanding) of the facts and holding *In Re Estate of Elson (Elson)* (1983) 120 Ill.App.3d 649.  The Motion cites *Elson* as supporting a legal argument it clearly does not support, <u>*i.e.*</u>, that because an Illinois probate document is filed identifying a decedent's last known *residence* in Illinois, it legally follows that that document conclusively establishes an Illinois *domicile* at the time of death — as a matter of law.  In fact, the court in *Elson* came to the opposite conclusion.

In *Elson*, the Court directly contradicts Defendant's assertion that under Illinois law "domicile" and "residence" are synonymous.  "The question of domicile, as it relates to a decedent, is one of the most difficult in the law because it turns on the proof of the intent of a deceased person."  (*Id.*, at 654).  "The matter of domicile is largely one of intention," and, hence, "is primarily a question of fact" (*Id.*).  *Elson* defines: "Domicile as the true, permanent home of a person, a place where he intends to return whenever he is absent." *Id*.

The *Elson* court holds that domicile is not demonstrated by blanket conclusion of current residency made by a third-party filling out form Probate Petition.  The Court elaborates: "A person must have a domicile at all times, but there can be only one domicile at a time, and once a domicile is established, it continues until a new one is acquired." *Id*.  "A change of domicile is effected by an actual abandonment of the first domicile, an intent not to return to it, and physical presence in another place with the intention of making the last-acquired residence the permanent home." *Id*.  "The matter of domicile is largely one of intent and is primarily a question of fact … Very slight circumstances often decide the question of domicile, and the decision is made based upon a preponderance of the evidence

-11-

that one place is favored as a domicile. … The resolution of the question of domicile depends largely on the facts and circumstances of a particular case." *Id.*

In *Elson*, the decedent died in Pennsylvania in what was apparently an attempt to relocate to Pennsylvania for all professional, legal, personal and property ownership purposes.  In *Elson*, Decedent's Sister filed the same document Defendant attaches as Exhibit "A" to its Motion, i.e., "Cook County, State of Illinois — Petition for Letters of Administration."  In her Petition, she listed Illinois as the state of her residence at the time of death.

The Sister then sought to establish probate in Illinois based on the fact that the Petition of Letters of Administration she filed established that the decedent's residence was listed as Illinois and that it followed legally under Illinois Law that this document proved an Illinois *domicile* at the time of death.

Decedent's Father sought to administer probate in Pennsylvania.  He contended the facts indicated the decedent intended to make a permanent move to Pennsylvania for all legal, professional and personal purposes.  The *Elson* Court held: (a) it was a factual question as to whether the decedent had died a domicile in Illinois or Pennsylvania, (*i.e.*, not a legal question this Court should be deciding on a Rule 12(b)(6) Motion); (b) the listing of an Illinois residence on the Petition for Letters of Administration was not dispositive of a lack of intent by the decedent to relinquish Illinois domicile for Pennsylvania; *and* (c) the facts of decedent's intent indicated that Pennsylvania was the decedent's domicile at time of death despite the Illinois *residency* listing on the Petition.

Ninth Circuit and California Courts assessing California law are in accord on nearly every element of the *Elson* holding.  (See analysis of *Lew, Kanter, Guadin,* and *Fenton* cases in the immediately above section.)

Defendant has the burden on this 12(b)(6) Motion to conclusively establish the existence of a legal conclusion of domicile outside California in order to prevail in its challenge to the Complaint's Civil Code §3344.1 Claim.  The law and facts presented in the Motion, even if this Court chooses to take Judicial Notice of the facts in Exhibits "A" and

"B" thereto, do not establish that, under either Federal, California or Illinois law, Chris Farley intended to be, or was conclusively and legally, domiciled in Illinois or any other place outside California at the time of his death.  Accordingly, Defendant's Rule 12(b)(6) Motion to the Complaint's Civil Code §3344.1 Claim should be denied.

**B.  *Motion to Dismiss The Complaint's Third Claim Under the Lanham Act's §43(a) Should Be Denied.***

    **1.  *In Accord With Rule 8, Plaintiff Has Sufficiently Alleged Defendant's Use of a "Distinctive Attribute" of Chris Farley's Persona.***

In the Motion, Defendant argues that Plaintiff fails to allege a distinctive attribute of Chris Farley that Trek may have utilized.  This is not true.  Plaintiff clearly pleads facts far exceeding "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Fed. Rule Civ. Pro. 8(a)(2).

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in relevant part: "Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any ... **name**, symbol, or device, or any combination thereof ... which ... is likely to cause confusion, or to cause mistake, or to deceive as to ... the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."  (Emphasis added).

The Motion does not dispute Chris Farley was a world famous celebrity or that consumers knew of, and identified him and his brand of services, by the Farley surname.  Likewise, the Motion does not dispute that Defendant chose the Farley name as a trade and brand name for its Fat Bikes for any other reason than to reference Chris Farley.  Clearly discovery paint a very clear picture of Defendant's intent.

In a Lanham Act §43(a) claim, allegations of "use in commerce" of a celebrity's "**name**" with the "intent" and "result" of "confusing" the "consumer" regarding the "origin, sponsorship, or approval" of such use definitionally satisfy the pleading requirement

necessary to allege a violation of the statute for Rule 12(b)(6) challenge purposes. But, in the Complaint, Plaintiff goes much further into the facts, clearly and concisely putting Defendant on fair notice of the allegations related to its contention that the name "Farley" was, and has been for years, a distinctive attribute of Chris Farley.  Without limitation, Plaintiff has pled as follows:

(a) The Complaint defines the "Farley IP Rights" as those rights rightfully controlled by Plaintiff in and to Chris Farley's "name, likeness, image, voice, persona, signature, and other intellectual property comprising Farley's personal attributes (the "Farley IP")" (Complaint, ¶13, ln. 21-26);

(b) Chris Farley was referred to by his surname "Farley" by his "friends and colleagues" (Complaint, ¶12, ln. 20);

(c) "Each element of the Farley IP including, without limitation, **the name "Farley" is, and has been, well-recognized, distinctive and unique and singularly associated with [Chris] Farley**" (Complaint, ¶58, ln. 11-13, emphasis added);

(d) "**The 'Farley' name is recognized throughout worldwide trading areas and channels of trade as a famous and distinctive mark which identifies the source of entertainment and related services of Farley**" (Complaint, ¶58, ln. 13-15, emphasis added);

(e) "The name 'Farley' and the other Farley IP are famous and distinctive within the meaning of US trademark law, including 15 U.S.C. §§1125 and 1127" (Complaint ¶58, ln. 15-17);

(f) "Prior and subsequent to Farley's death, the Farley IP Rights acquired tremendous commercial value due, in part, to Farley's fame and his one-of-a-kind celebrity and personal persona" (Complaint ¶14, ln. 3-6);

(g) "**Farley's name, identity and persona, and all of the other Farley IP, are recognized instantly by the general public throughout the world** and have substantial commercial value due to Farley's carefully crafting his identity as a comedian when he was alive, and third parties' and Plaintiff's posthumous authorized publication, marketing, and

-14-

other exploitation of the Farley IP" (Complaint ¶15, ln. 7-11, emphasis added);

(h) "During his life, Farley developed a **very powerful brand recognized by millions around the world.** This brand is embodied by the Farley IP in various forms.  Farley's brand of comedy and acting, and his significant and unique celebrity status, became associated with his appearance as a fat, loud and crazy character … . The name **"Farley" is now, and has been for nearly three decades, linked and associated with Farley's persona** and his identity as a fat comic actor willing to go into comic territories others would not seek to traverse"  (Complaint ¶17, ln. 16-22, emphasis added);

(i) "Since Farley's death, the word 'Farley' has **become iconic and narrowly associated with Farley's individual identity**, comic brand, and his loud, Midwestern, 'fat-guy' common man roots in Madison, Wisconsin" (Complaint ¶20, ln. 10-12, emphasis added);

(j) "[Defendant] chose the brand name "Farley" to **welcome and encourage potential customers and the bike industry generally to immediately associate** Defendant's Fat Bikes with one of their favorite "fat" and "loud" comedians" (Complaint ¶25, ln. 10-13, emphasis added);

(k) "Bicycle consumers and the industry as a whole immediately associated [Defendant's] Madison, Wisconsin build, fat, loud, sturdy, rugged and outlandish Midwestern Fat Bikes, with Farley's world-famous image as a fat, loud, sturdy, rugged Midwesterner who is arguably the most famous person to have ever been born in Madison, Wisconsin (Complaint, ¶25, ln. 15-19);

(l) "Customers around the world (as well as bicycle industry professionals, enthusiasts and journalists) immediately picked up on Defendant Trek's (not so subtle) reference to, and association with, Farley" (Complaint ¶26, p. 7 ln. 27 - p. 8 ln. 1-3);

(m) "[Defendants] know Farley was well known to the specific and targeted generation of consumers that tend to purchase Fat Bikes, and that by creating an association between 'loud' 'fat' and 'Midwestern' Farley and the Farley Branded 'Fat Bike' Products, they would be able to attract the attention of such consumers who immediately recognized the Farley

-15-

name" (Complaint ¶29, ln. 1-6); *and*

(n) "Any person can reasonably determine the Farley name on the bicycles depicts, refers to, or otherwise identifies Farley and the Farley IP, and creates an association between Farley and Defendants" Complaint ¶41, ln 1-3) (the allegations comprising (a) - (n) above are collectively referred to as the "Distinctive Attribute Allegations").

The Complaint must be read as a whole and not parsed piece by piece to determine whether each allegation, in isolation, is "plausible." *Braden v. Wal-Mart Stores, Inc.* (8th Cir. 2009) 588 F.3d 585, 594.  "The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made but he Court on a Rule 12(b)(6) motion." *Id*. This Court cannot dismiss a complaint that alleges a "plausible version of the events merely because the court finds a different version more plausible." *Anderson News, LLC v. American Media, Inc.* (2nd Cir. 2012) 680 F.3d 162, 185.

Even if the multitude of facts alleged in the Complaint somehow fail to notify Defendant of how the name Farley is alleged to have been a distinctive attribute of Chris Farley, all reasonable inferences from the facts that are alleged are drawn in Plaintiff's favor in determining whether the Complaint states a valid claim. "*Twombly* and *Iqbal* do not change this fundamental tenet of Rule 12(b)(6) practice." *Braden v. Wal-Mart Stores, Inc. (8th Cir. 2009) 588 F.3d 585, 594* ; S*ee also, Barker v. Riverside County Office of Education* (9th Cir. 2009) 584 F.3d 821, 824.  The reasonable inferences to be drawn from the allegations in the Complaint make it clear that the name Farley was (and remains) a distinctive attribute of Chris Farley and that the Complaint is predicated on its misuse by Defendant.

Lastly, Defendant suggests in the Motion that because neither Chris Farley nor Plaintiff filed a trademark registration for Chris Farley's name, as Trek attempted / and failed to do, Plaintiff can never have right to claim an Lanham Act 43(a) violation for the use of the name "Farley" even when a use is likely, and designed, to cause confusion.  This is not true. In cases involving confusion over endorsement by a celebrity plaintiff, "mark" means the celebrity's persona, and not necessarily a pre-registered trademark, and "[i]n cases

concerning confusion over celebrity endorsement, the plaintiff's 'goods' concern the reasons for or source of the plaintiff's fame." *White v. Samsung Electronics America, Inc. (White)* (9th Cir. 1992) 971 F.2d 1395, 1400. To over come a 12(b)(6) Motion, Plaintiff need not plead Chris Farley had a valid, registered trademark in his name.

Accordingly, Plaintiff has clearly plead the requisite facts to satisfy Rule 8(a)(2)'s pleading requirement with respect its claim that the name Farley constitutes a distinctive attribute of Chris Farley's persona, the use of which by Defendant on its Fat Bikes is likely to cause the average consumer for such bikes to be confused about Chris Farley's and Plaintiff's relationship to the "origin, sponsorship, or approval" of Defendant's Fat Bikes. Defendant's Rule 12(b)(6) Motion with respect to the Complaint's Third Cause of Action should be denied.

### 2. Defendant's Assertion Its Use of Chris Farley's Surname is Legally Incapable of Ever Causing Consumer Confusion or Violating Lanham Act 43(a) is Erroneous and Unsupported by Law.

Defendant claims that the Complaint's Lanham Act §43(a) Claim fails as a matter of law because any celebrity's "sur<u>name</u>" is too "vague" to constitute a "<u>name</u>, symbol, or device" under § 1125(a). (Motion at p. 14-15). This premise is clearly incorrect, and if the legislature had intended to exclude "surnames" from the meaning of "names" in the statute, it follows that it would have included such exclusion in the text of the Lanham Act.  It did not.  Further, the Motion fails to cite any case in the history of Lanham Act jurisprudence that stands for this proposition that a "surname" cannot be a "name" for purposes of a Lanham Act §43(a) claim.

The Ninth Circuit recognizes a Lanham Act §43(a) claim for misuse of a celebrity's persona if any element of a celebrity's persona or identity, including his <u>name</u>, is used without authorization on or in connection with third-party's product, when such use could cause confusion as to the celebrity's endorsement of, and/or affiliation with, the product or the third-party.  "[A] celebrity whose endorsement of a product is implied through the imitation of a distinctive attribute of the celebrity's identity, has standing to sue for false

endorsement under section 43(a) of the Lanham Act." *Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir.1992); see also *White v. Samsung Electronics America, Inc.* (9th Cir. 1992) 971 F.2d 1395, 1400 (analyzing at the summary judgement stage the level of recognition of the celebrity's "persona" to determine whether a likelihood of confusion exists under § 1125(a)); *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 809 (9th Cir.1997) (analyzing at the summary judgment stage § 1125(a) claims actors who played characters in Cheers brought against the creator of animatronic figures set in airport bars modeled after the Cheers set).

Any name, symbol or device element of a celebrity's persona is eligible to form a "distinctive attribute" of a celebrity if the relevant facts indicate a third-party's use of that name, symbol or device does (or is likely to) cause confusion, mistake, deception regarding the origin, sponsorship, or approval of his or her goods, services, or commercial activities by celebrity.  For a Lanham Act 43(a) claim, a Rule 12(b)(6) motion should be denied if its is possible under any set of facts that confusion could occur.  See *White,* at 1399-1400 [discussing the Ninth Circuit's adoption of the eight point so-called "Sleekcraft Factors" to be utilized in the factual analysis of whether an existing trademark or a celebrities persona accord what level of Lanham Action §1125 protection, and citing *AMF Inc. v. Sleekcraft Boats (Sleekcraft)* (9th Cir. 1979) 599 F.2d 341, 348-349.]

Under *Sleekcraft,* as most recently analyzed in *JL Beverage Company, LLC v. Jim Beam Brands Co. (JL Beverage) (9th Cir.* 2016) 828 F.3d 1098, it is clearly a complex and fluid question for the trier of fact to discern likelihood of consumer confusion, and this analysis cannot be not be the subject of a Rule 12(b)(6) Motion unless the Court finds it all but impossible for facts to support the claim. This is not the case in this Motion.  Discovery and expert witness testimony will help make this clear at the next stage of this litigation.

> **3.** **In this Case, Finding A "Distinctive Attribute" and "Potential for Confusion" Require Factual Inquiries Proper For a Rule 56 Summary Judgment Motion, not a Rule 12(b)(6) Motion.**

In the Complaint Plaintiff has made its various "Distinctive Attribute Allegations."

-18-

No where in its Motion does Defendant even suggest that the trade name and brand "Farley," as used in connection with Defendant Trek's bicycles, was chosen for any reason other than to draw a confusing mis-association with Chris Farley.

Sidestepping any attempt to explain how its use of "Farley" relates to some other person, place, thing or concept, Defendant makes two arguments in the Motion that seem to imply that, even if Defendant did name the Fat Bikes after Chris Farley, this use as a matter of law can never amount to a Lanham Act §43(a) claim.

The first point is that the name "Farley," as a matter of law and regardless of the facts pled, can never become distinctive enough to be the subject of a Lanham Act §43(a) claim. Per immediately above analysis, this is not correct. The second point, in the alternative, is that even if it can, Plaintiff has failed to satisfy Rule 8's limited pleading requirements by pleading that the name Farley is a distinctive attribute of Chris Farley. This point is also wrong and unsupported by any legal argument or case in the Motion.

"The core element of trademark infringement is the likelihood of confusion." *Brookfield Commc'n, Inc. v. W. Coast Entm't Corp (9th Cir.1999)* 174 F.3d 1036, 1053. A Lanham Act §43(a) claim should plead the distinctive attribute of the applicable celebrity. The Complaint does this throughout with respect to the name "Farley." Whether the distinctive attribute can plausibly cause consumer confusion is primarily a matter of fact unless the Court deems it otherwise inconceivable. Certainly this Motion offers no means for this Court to conclude it is inconceivable Defendant's use of the name Farley on its Bikes could cause the requisite consumer confusion.

The Motion offers no case that states that a celebrity's name fixed to a product as both a trade name and a label cannot possibly lead to the likelihood of confusion regarding the celebrity's association with, and endorsement of, Defendant's product as a matter of law.

Defendants cite no case or other authority in which a first, last or so-called "nickname" of a celebrity cannot, as a matter of law, be deemed a "distinctive attribute" underpinning a Lanham Act §43(a) claim. Defendants illogically imply that, because they could not obtain a "primary registry" trademark in the name "Farley" from the US Patent and Trademark

Office, the name Farley must, by default and as a matter of law, never be or become a distinctive attribute of, or otherwise publicly associated with, a celebrity identity.  This is not the case.

Defendant illogically references Exhibit "F" — the US Patent and Trademark Office Rejection Letter to its attempt to register "Farley" under the Principle Register — to establish with legal certitude that its use of the word "Farley" cannot ever be confused or associated with Chris Farley.  In Exhibit "F" to the Motion, the USPTO ironically states just the opposite: (a) that the reason Defendant could not place its trademark on the Principle Registry (Lanham Act Sections 23-28, 15 U.S.C. §§ 1091-1096) was because Trek had not established its use of Farley was other than as "primarily merely a surname;" *and* (b) it specifically cites as a rationale for rejecting Defendant's attempt to obtain the Farley trademark is a prior use by **"CHRIS FARLEY [who] is one of the most well-known comedians whose movies remain popular long after his death.**"  (Motion, Exhibit "F," pg. 19).

In Exhibit "F," the USPTO examining attorney, Matthew G. Galan, found and made clear to Defendant <u>before</u> it used Farley in connection with the Fat Bikes that there existed a likelihood of potential confusion *with Chris Farley*.  He concluded Defendant's obtaining a trademark in Farley amounted to nothing more than a reference to a surname because Defendant offered no rationale as to how or why the name Farley was associated to Defendant or its Fat Bikes.[5]  Essentially, the USPTO put Defendant on notice that **"Chris Farley, the entertainment star"** was a prior user that could cause confusion in the marketplace. (Motion, Exhibit "F," pg. 19).

### 4.    *Defendant's "Nominative Fair Use Defense" Should Not Be Considered in A Rule 12(b)(6) Motion.*

Complaints need not contain any information about defenses and may not be dismissed for that omission.  *Xechem, Inc. v. Bristol-Myers Squibb Co (Xechem)* (7th Cir. 2004) 372 F.

---

[5]  Plaintiff expects discovery will confirm Defendant's representatives may have likely committed perjury by filing its primary and secondary trademark applications by stating (wrongfully) that the choice of Farley as a trademark did not consist of "matter which may …. falsely suggest a connection with persons, living or dead." 15 U.S.C. §1152(a).

3d 899, 901.   The "Nominative Fair Use" affirmative defense is a conditional affirmative defense in that its occurrence does not automatically render it impossible for plaintiff to recover under the Lanham Act.  Where an alleged defense is conditional rather than absolute, Plaintiff need not plead facts that dispute or contradict the defense and a Rule 12(b)(6) motion to dismiss should be denied.  See *McCalden v. California Library Ass'n* (9th Cir. 1990) 955 F.2d 1214, 1219.

In order to grant a Rule 12(b)(6) motion on the basis of an affirmative defense, the Court must conclude the defense to be absolute in that the facts establishing that defense must (i) " be ***definitively ascertainable*** from the complaint and other allowable sources of information," *Grey v. Evercore Restructuring, LLC* (1st Cir. 2008) 544 F.3d 320, 324 (internal quotes omitted, emphasis added), and (ii) "suffice to establish the affirmative defense ***with certitude***." *ASARCO, LLC. v. Union Pacific Railroad* Co. *(ASARCO)* (9th Cir. 2014) 765 F.3d 999, 1004.

In *ASARCO*, the Ninth Circuit made it clear that for a defendant to succeed on a Rule 12(b)(6) motion based on an affirmative defense, the defendant must show "some obvious bar to securing relief" on the face of the complaint.  *Id*.  Further, for purposes of a Rule 12(b)(6) Motion, Federal Plaintiffs are not required to "plead around" or "anticipate" defenses that may be raised in the answer or at trial.  *Xechem, at* 901.

In this case, it is unlikely the nominative fair use affirmative defense will ever assist Defendant at any point in this litigation (see immediately below argument).  But, for the purposes of this present Rule 12(b)(6) Motion, the nominative fair use defense should not be considered because Defendant presents no argument or admissible evidence to establish its applicability "with certitude" and that its grounds are "definitely ascertainable" from the Complaint.  The applicability of the nominative fair use defense is conditioned on facts that are not the proper subject of analysis on a Rule 12(b)(6) Motion, which was designed to adjudicate issues resolvable only as a matter of law.  Accordingly, Plaintiff respectfully requests this Court disregard Defendant's nominative fair use affirmative defense at this pleading stage, and not consider it in ruling on Defendant's Rule 12(b)(6) Motion.

**5.    *Defendant Will Not Be Able to Use "Nominative Fair Use" Defense At Any Time Because Defendant Uses "Farley" as a Trade Name and Only To Describe Defendant's Property.***

In this case, Defendant is using Plaintiff's mark for one reason only: to describe and reference Defendant's "Fat Bikes." There is no need for Defendant to reference Chris Farley's name, persona or any other distinctive attribute in connection with Defendant's Fat Bikes. As conceded in the Motion, other than as a surname, "there is no dictionary definition of 'Farley.'" (Motion at pp. 15, ln. 1-4). It's not surprising that in the Motion, Defendant offers no other explanation of its choice of the word "Farley" to be the trade name for is Fat Bikes.

In every case referenced by Defendant in its Motion describing the nominative fair use defense, the functionality of the applicable defendant's product requires a reference, description, depiction or comparison to the Plaintiff's mark or celebrity persona. There is no case in the history of Lanham Act jurisprudence where nominative fair use was used successfully to defend the wholesale usurpation of a distinctive attribute of a celebrity's persona as the actual trade name or trademark of a defendant's product. This is what Plaintiff alleges in the Complaint.

Plaintiff expects discovery will prove Defendant had no practical or utilitarian reason whatsoever to use the name Farley in connection with its Fat Bikes — other than to create th associative confusion that the Lanham Act specifically seeks to address.

In *Cairns v. Franklin Mint Co.* (Cairns) (9th Cir. 2002) 292 F.3d 1139, and each of the other cases Defendant relies on in the Motion, the nominative fair use defense is limited to a the applicable defendant's (a) required, limited and non-trade name reference to, (b) necessary comment on, or (c) comparison of its products to, a celebrity persona element as part of Defendant's actual production or effectuation its product. See, generally, *Id*. at 1150-51. This is not the case with Defendant's specific use of Farley *only to* name, and advertise, its Fat Bikes. In short, there was no requirement, practically or otherwise, that Defendant use any element of Farley's persona in connection with the Fat Bikes.

It would eliminate all meaning to the Lanham Act §43(a) if a party could, as Defendant argues, simply use another trademark or celebrity persona element to name its own product and simply say the label affixed on the product, its box, and its marketing materials, was simply meant to describe, or as a comparative reference to a third-party's product.  Clearly, the exception would swallow the rule.

Accordingly, Defendant in this case will be limited at trial (or Rule 56 Summary Judgment Motion) to a classic fair use defense.  Under the common law classic fair use defense codified in the Lanham Act at 15 U.S.C. § 1115(b), "[a] junior user is always entitled to use a descriptive term in good faith in its primary, descriptive sense <u>other than as a trademark</u>." *McCarthy on Trademark and Unfair Competition § 11:45 (4th ed.2001) (Emphasis added)*.  To establish a classic fair use defense, a defendant must prove the following three elements: "1. Defendant's use of the term is not as a trademark or service mark; 2. Defendant uses the term 'fairly and in good faith'; and 3. [Defendant uses the term] '[o]nly to describe' its goods or services." Id. at § 11:49 (quoting 15 U.S.C. § 1115(b)).

But, in the Ninth Circuit, the classic fair use defense is not available when ever there is a likelihood of customer confusion as to the origin of the product. See *Transgo, Inc. v. Ajac Transmission Parts Corp. (9th Cir.1990)* 911 F.2d 363, 365 n. 2 (classic fair use defense available only so long as such use does not lead to customer confusion as to the source of the goods or services); See also, *Lindy Pen Co. v. Bic Pen Corp. (9th Cir.1984)* 725 F.2d 1240, 1248. The classic fair use analysis, therefore, only complements the likelihood of customer confusion analysis set forth in *Sleekcraft*.  *Cairns, at* 1150-51.  Whether a classic fair use defense ever applies to Defendant's use of the Farley name will be a question for the trier of fact to determine beyond this Rule 12(b)(6) Motion.

Based on the various argument offered in this section, Plaintiff requests this Court deny Defendant's Rule 12(b)(6) Motion as it applies to the Complaint's Third Claim under Lanham Act §44(a).

*C.   Motion to Dismiss Fourth Claim Under Calif. Bus. and Prof. Code § 17200*
*Should Be Denied.*

Defendant does not dispute that Plaintiff has properly alleged facts to support its claim under Bus. Prof. Code §17200.  Defendant's only grounds for requesting this Court dismiss this claim is that it is predicated on Plaintiff's allegations that Defendants actions as alleged are also violative of Civil Code §3344.1.  Of note, a violation of state or federal law may serve as a predicate for an action under the unfair competition law (UCL). *Quacchia v. DaimlerChrysler Corp.* (2004) 122 Cal.App.4th 1442.  So, retention of either of the Complaint's Civil Code §3344.1 or Lanham Act §43(a) Claims should cause this Court to deny Defendant's Rule 12(b)(6) Motion with respect to the Fourth Claim under Cal. Bus. Prof. Code §17200.

## IV.

## CONCLUSION

As detailed herein, Complaint meets the liberal pleading requirements of Rule 8. Plaintiff states its claims with a large volume of factual allegations that satisfy every test of pleading sufficiency.  Defendants offer no viable legal or factual support for any of the Motion's arguments that the Second through Fourth Claims in the Complaint should be dismissed as a matter of law. The Motion should be denied.  In the alternative, should this Court grant the Motion in whole or in part, Plaintiff respectfully requests the opportunity to amend the Complaint to conform with the Court's ruling.

Dated: December 1, 2017          KULIK GOTTESMAN SIEGEL & WARE, LLP

By: _____
Kirk Edward Schenck
Attorney's for Plaintiff, Make Him Smile, Inc.

-24-