Michael B. Garfinkel, Bar No. 156010
MGarfinkel@perkinscoie.com
Oliver M. Gold, Bar No. 279033
OGold@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park East, Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Autumn N. Nero (admitted *pro hac vice*)
ANero@perkinscoie.com
**PERKINS COIE LLP**
1 East Main Street, Suite 201
Madison, WI  53703
Telephone:  608.663.7460
Facsimile:  608.663.7499

Attorneys for Defendant
TREK BICYCLE CORPORATION

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAKE HIM SMILE, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>TREK BICYCLE CORPORATION, a Wisconsin corporation; and DOES 1 through 1000, inclusive,<br><br>Defendants. | Case No.: 2:17-cv-07136-RGK (KS)<br><br>**REPLY IN SUPPORT OF DEFENDANT TREK BICYCLE CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>Date:      January 16, 2018<br>Time:      9:00 a.m.<br>Judge:    Hon. R. Gary Klausner<br>Location: Courtroom 850 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................... 1

II. LEGAL STANDARD ............................................................................................. 3

III. ARGUMENT .......................................................................................................... 4

    A. Plaintiff Concedes Its Common Law Right of Publicity Claim Lacks Merit and the Illinois Probate Records Defeat Its Civil Code Section 3344.1 Claim ......................................................................... 4

    B. Plaintiff's Lanham Act Claim Fails Because "Farley" Is Not a Distinctive Attribute and Trek Is Protected by the Nominative Fair Use Doctrine ................................................................................... 7

    C. Plaintiff's Section 17200 Claim Falls with the Others ......................... 9

    D. Leave to Amend Is Not Warranted ..................................................... 10

IV. CONCLUSION ..................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adaptive Mktg. LLC v. Girard Gibbs LLP*,
No. CV 09-04739 RGK RCX, 2009 WL 8464168 (C.D. Cal. Oct. 9, 2009) (Klausner, J.) ...................................................................................................... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................... 2, 3, 4

*Avery Dennison Corp. v. Sumpton*,
189 F.3d 868 (9th Cir. 1999) .................................................................................... 7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................. 3

*Cairns v. Franklin Mint Co.*,
292 F.3d 1139 (9th Cir. 2002) .................................................................................. 8

*Clark v. America Online Inc.*,
No. CV-9805650 CAS (CWX), 2000 WL 33535712 (C.D. Cal. Nov. 30, 2000) ........................................................................................................... 9

*Gordon v. City of Oakland*,
627 F.3d 1092 (9th Cir. 2010) ................................................................................ 10

*Headspace Int'l, LLC v. New Gen Agric. Servs., LLC*,
No. CV-16-3917-RGK, 2016 WL 9275781 (C.D. Cal. Nov. 15, 2016) (Klausner, J.) ...................................................................................................... 4

*In re Estate of Elson*,
120 Ill. App. 3d 649 (1983) ................................................................................. 5, 6

*Lew v. Moss*,
797 F.2d 747 (9th Cir. 1986) .................................................................................... 5

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,
692 F.3d 983 (9th Cir. 2012) .................................................................................... 6

*Orion Tire Corp. v. Goodyear Tire & Rubber Co.*,
268 F.3d 1133 (9th Cir. 2001) ................................................................................ 10

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Playboy Enterprises, Inc. v. Welles*,
   279 F.3d 796 (9th Cir. 2002) .................................................................................. 8

**STATUTES**

Civil Code Section 3344.1 ..................................................................................... passim

Illinois Probate Act ................................................................................................. 1, 5

Lanham Act ............................................................................................................ passim

Lanham Act §43(a) ................................................................................................. 9

**RULES**

Federal Rule of Civil Procedure Rule 8 ........................................................... 1, 2, 3, 7

## I. INTRODUCTION

Plaintiff's Opposition is premised on an outdated pleading standard. Throughout the Opposition, Plaintiff argues that the Court must accept the allegations of the Complaint as true and that Federal Rule of Civil Procedure Rule 8 only requires notice pleading. While Plaintiff pays lip service to *Iqbal* and *Twombly*, it relies heavily on earlier case law in an effort to water down the current pleading standard. Under *Iqbal* and *Twombly*, the Court is not required to accept as true conclusions lacking factual support or statements that are contradicted by facts shown by judicially noticeable documents or those incorporated by reference. The Opposition confirms that Plaintiff's Complaint is insufficient and Trek's motion to dismiss should be granted.

Plaintiff is forced to concede that its common law right of publicity claim fails as a matter of law since that right is not descendible. In an effort to save its California statutory claim, Plaintiff attacks the Illinois probate records, which establish that Chris Farley died an Illinois domiciliary without any Section 3344.1 rights. But, unable to dispute the authenticity of the probate records, Plaintiff instead incorrectly argues that Trek's Request for Judicial Notice ("RJN") is insufficient. Plaintiff next attempts to undermine the records by claiming that they merely contain statements of "third parties" who likely neither discussed "domicile" with Chris Farley nor understood its legal definition. This is disingenuous, at best, as the statements were made under oath by Chris Farley's parents. Moreover, his mother is a Director of Plaintiff and previously served as its CEO. In any event, Plaintiff claims that the Illinois probate documents only state that Chris Farley died as a resident of Illinois but fails to rebut the Illinois precedent that makes clear that "resident" and "domicile" are used synonymously under the Illinois Probate Act and that, since Chris Farley had no Illinois real property, he must have been an Illinois domiciliary to have his estate probated there.

Plaintiff is also unable to salvage its Lanham Act claim. Plaintiff has all but conceded that "Farley" is not a distinctive attribute of Chris Farley—it is alleged to have been used by Chris Farley's friends and family only, not the public that Plaintiff now apparently fears might be confused. Plaintiff's Opposition only serves to bolster Trek's argument by attempting to conflate "Farley" and "Chris Farley" to make its point. Plaintiff then misinterprets the nominative fair use defense as requiring a finding that Trek had no choice but to use Plaintiff's mark to identify Trek's product. However, the cases cited by Trek establish that the nominative fair use defense is available where the defendant (Trek) is alleged to have used the plaintiff's mark ("Farley") to refer to the plaintiff's product (Chris Farley), even if the ultimate goal is to refer to the defendant's product (Trek's bike).

As to the UCL claim, Plaintiff does not dispute that to satisfy the "unlawful" requirement it must be predicated on a sufficiently plead claim for violation of a statute. Plaintiff's Complaint relies solely on Section 3344.1 and therefore the UCL claim falls with that claim. As a fallback, Plaintiff notes that its Lanham Act claim can be the predicate for a UCL claim—but that was not pled in the Complaint and that claim too fails as a matter of law.

Plaintiff's goal is clear—muddy the waters to survive dismissal and threaten Trek with expensive discovery in the hopes that it might find facts to support its claims. This is precisely why *Iqbal* and *Twombly* impose requirements beyond pure notice pleading. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Moreover, the "facts" Plaintiff hopes to discover would not alter the outcome. Whether or not Chris Farley was "a world-famous celebrity" or Trek named its bike "Farley" as a "hook" to associate with him has no bearing on the issues presented in this motion. Accordingly, the motion should be granted in its entirety and leave to amend should be denied because it would be futile.

## II.     LEGAL STANDARD

Plaintiff misstates the holding in *Ashcroft v. Iqbal.* (Opp'n. at 4). In *Iqbal*, the U.S. Supreme Court examined its earlier holding in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), relative to a plaintiff's pleading burden under Rule 8 of the Federal Rules of Civil Procedure. *Iqbal*, 556 U.S. at 678–79. There, the Court explained that:

> Two working principles underlie [the holding in *Twombly*]. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Second, determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense. A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* (internal citations omitted).

While Plaintiff repeatedly argues that the Court is required to accept all allegations in the Complaint as true, that of course, is not what *Iqbal* and *Twombly* instruct. Those cases and their progeny hold that a court is not required to accept as true conclusions lacking factual support or statements that are contradicted by facts shown by documents that are judicially noticeable or incorporated by reference.

Plaintiff ignores that authority and relies exclusively on cases predating *Iqbal* and *Twombly* as support for its position. (*See* Opp'n at 4) (citing *Leatherman v. Tarreant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168–169 (1993); *Bautsta [sic] v. Los Angeles Cty.*, 216 F.3d 837, 843 (9th Cir. 2000); *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005); *Enesco Corp. v. Price/Costco, Inc.*, 146 F. 3d 1083, 1085 (9th Cir. 1998); *Conley v. Gibson*, 355 U.S. 41, 45–46

1 (1957)). Following the correct standard, the Complaint falls short.

## III.   ARGUMENT

### A. Plaintiff Concedes Its Common Law Right of Publicity Claim Lacks Merit and the Illinois Probate Records Defeat Its Civil Code Section 3344.1 Claim.

Plaintiff asserted two right of publicity claims, one under California common law and the other under California Civil Code Section 3344.1. Plaintiff concedes that the California common law right is not descendible and has stated its willingness to stipulate to striking the claim. (Opp'n at 1, n.1).

Trek also seeks to dismiss Plaintiff's California Section 3344.1 claim. Importantly, Plaintiff does not dispute that to state a claim under California Section 3344.1 Chris Farley must have died a domiciliary of California. Otherwise, he could not have devised or assigned any Section 3344.1 rights. Plaintiff argues, however, that its conclusory allegation that Chris Farley was domiciled in California at death is sufficient to survive the motion. As explained above, this is simply not true under *Iqbal* and *Twombly*. (*See* Compl., ¶ 11); *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."); *Headspace Int'l, LLC v. New Gen Agric. Servs., LLC*, No. CV-16-3917-RGK (GJSx), 2016 WL 9275781, at *2 (C.D. Cal. Nov. 15, 2016) (Klausner, J.) ("The Court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice.").

Furthermore, the Court may disregard allegations that are contradicted by matters properly subject to judicial notice, such as probate records. (*See* Mot. at 8). Trek presented sworn statements from Chris Farley's parents, Mary Anne and Thomas J. Farley, filed in the Illinois probate declaring that he died a resident of Illinois having no property and listing as his heirs his parents and four siblings including Kevin Farley. (RJN, Ex. A, B). Tellingly, Plaintiff does not dispute the authenticity of the Illinois probate records. Instead, Plaintiff objects to the RJN on

1 the grounds that the records are not attached to a supporting declaration. As
2 explained in response to the objection, there is no such requirement. The RJN is
3 signed by counsel of record and includes details of how the records were obtained,
4 and further offers to make the certified copies obtained available to the Court at the
5 hearing or upon request.

6 Plaintiff unconvincingly tries to distance itself from the sworn statements in
7 the Illinois probate records by characterizing Chris Farley's parents as "third parties
8 who likely neither discussed the subject of domicile with Chris Farley, nor
9 understood the legal definition of the word under California law." (Opp'n at 7).
10 Mary Anne and Thomas J. Farley are not only Chris Farley's parents, but Mary
11 Anne Farley served as the CEO of Plaintiff and remains a Director. (Mot. at 9;
12 RJN, Ex. E).[1] Chris Farley's brother and heir, Kevin Farley, took over as CEO of
13 Plaintiff in December 2015. (RJN, Ex. E.)

14 Plaintiff also argues that the Illinois probate records merely establish that
15 Chris Farley resided in Illinois at the time of his death, not that he was domiciled
16 there. Plaintiff then delves into the distinction between "residence" and "domicile"
17 under California law.[2] (Opp'n at 7–8). This misses the point, as Illinois law is
18 determinative of this issue. While *Elson* discusses the distinction between the two
19 terms, it makes clear that while they have "different shades of meaning," they are
20 used synonymously under the Illinois Probate Act. *In re Estate of Elson*, 120 Ill.
21 App. 3d 649, 653–54 (1983). Moreover, "[a]n Illinois circuit court in probate may

---

[1] Chris Farley's sister is identified as an heir and served as Secretary and Chief Financial Officer, until December 2015, when his brother Kevin Farley assumed all three roles. (RJN, Ex. E).

[2] Plaintiff cites *Lew v. Moss*, which explains that "a person's old domicile is not lost until a new one is acquired," "[a] change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely," and "domicile is evaluated in terms of 'objective facts,' and that statements of intent are entitled to little weight when in conflict with facts." 797 F.2d 747, 750 (9th Cir. 1986) (internal citations omitted).

1  exercise jurisdiction over the estate of a decedent either when the deceased was
2  domiciled in Illinois or at the time of her death owned property in this State." (*In re*
3  *Estate of Elson*, 120 Ill. App. 3d 649, 654 (1983). Since the Illinois probate records
4  establish that Chris Farley owned no property within Illinois (RJN, Ex. A), he must
5  have been domiciled there.

6  Plaintiff's attempt to turn *Elson* to its advantage also falls short. While its
7  principles are directly applicable here, *Elson* is factually distinguishable because it
8  was a dispute between family members as to the domicile of Natalie Elson at the
9  time of her death. Natalie's sister, Margo Elson, claimed Natalie's domicile was in
10 Illinois where she lived most of her life, while Natalie's father, Dr. Ralph Elson,
11 claimed Natalie's domicile was in Pennsylvania where she had recently moved
12 prior to her death. *See In re Estate of Elson*, 120 Ill. App. 3d 649, 651 (1983).
13 Since one's domicile is based in part on one's intentions, the dispute centered on
14 the competing family members' opposing versions of Natalie's intent based on her
15 conduct. Here, Chris Farley's domicile at death was determined to be Illinois
16 nearly 20 years ago without any objection from his family members listed as heirs.
17 These family members included Plaintiff's current CEO, brother Kevin Farley, and
18 Plaintiff's former CEO and current Director, mother Mary Anne Farley. The estate
19 was also represented by counsel. As a result, Plaintiff's effort to undermine the
20 importance of the Illinois probate records falls short.

21 Finally, Plaintiff does not dispute the applicability of judicial estoppel under
22 *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983 (9th Cir.
23 2012). Indeed, Plaintiff does not even address that case. That is because Plaintiff
24 cannot dispute that: (a) if Plaintiff previously took the position that Chris Farley
25 died as an Illinois domiciliary, it would be judicially estopped from asserting
26 otherwise; and (b) if the Illinois probate records establish that Chris Farley died a
27 domiciliary of Illinois, the Section 3344.1 claim fails as a matter of law. Here, in
28

1  light of the Illinois probate records, Plaintiff's allegation that Chris Farley was
2  domiciled in California should be disregarded and the claim should be dismissed.

### B. Plaintiff's Lanham Act Claim Fails Because "Farley" Is Not a Distinctive Attribute and Trek Is Protected by the Nominative Fair Use Doctrine.

Plaintiff's Lanham Act claim is defective because it fails to allege facts supporting its conclusory allegation that "Farley" is a distinctive attribute of Chris Farley. In its Opposition, Plaintiff merely restates its allegations and argues that they are sufficient under Rule 8. (Opp'n at 11–12). Again, Plaintiff fails to address the impact of *Iqbal* and *Twombly*. Plaintiff also conflates "Farley" with "Chris Farley" but does nothing to bolster its claim or walk back its own allegation that he was known as "Farley" to his friends and family, not his fans.

Plaintiff then raises strawmen that also do not advance its cause. First, Plaintiff incorrectly argues that Trek's position is that Plaintiff needs a registered mark to pursue the Lanham Act claim. (Opp'n at 13–14). Not so. Trek acknowledges the contrary in its moving papers. (Mot. at 13). Second, Trek does not contend that a celebrity's surname, or nickname, is incapable of supporting a Lanham Act claim. (Opp'n at 14–15). Of course, that is not Trek's position, which is that "the Lanham Act, . . . states that a mark that is 'primarily merely a surname' is not protectable unless it acquires secondary meaning." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 877 (9th Cir. 1999) (emphasis added, citations omitted). And Plaintiff has failed to "allege even one instance where Chris Farley or Plaintiff used 'Farley' as a source identifier for Chris Farley's persona or services." (Mot. at 14). In its Opposition, Plaintiff fails to cure this shortcoming.

Plaintiff also misunderstands the import of the office action Trek presented in support of its motion. (*Id.* at 16–17). The U.S.P.T.O. refused registration of "Farley" for Trek's bike because Farley is a common surname appearing 11,172 times in a nationwide dictionary, and gave examples of some "Farleys" including Chris Farley. (RJN, Ex. F). Contrary to Plaintiff's suggestion, the U.S.P.T.O. did

1  not suggest that Chris Farley was the most famous Farley, or that the Farley
2  surname is a distinctive attribute of Chris Farley, or that Trek's use of the Farley
3  name would create consumer confusion.

4  An alternative basis for dismissing Plaintiff's Lanham Act claim is the
5  nominative fair use defense. It is appropriate where a defendant has used the
6  plaintiff's mark to describe the plaintiff's product or service, even if the defendant's
7  ultimate goal is to describe the defendant's product. (Mot. at 15). To establish a
8  nominative fair use defense, a defendant must prove: (1) the plaintiff's product or
9  service is not readily identifiable without use of the trademark; (2) only so much of
10 the mark may be used as is reasonably necessary to identify plaintiff's product or
11 service; and (3) the user must do nothing that would, in conjunction with the mark,
12 suggest sponsorship or endorsement by the trademark holder. (*Id*.). This test
13 "should be applied instead of the test for likelihood of confusion set forth in
14 *Sleekcraft*." *Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002).

15 In opposition, Plaintiff mistakenly argues that the "nominative fair use
16 defense should not be considered in a Rule 12(b)(6) motion" based on old, out-of-
17 circuit authority (Opp'n at 17–18). Yet Plaintiff is unable to distinguish the
18 analogous Ninth Circuit case cited by Trek, *Cairns v. Franklin Mint Co.*, 292 F.3d
19 1139 (9th Cir. 2002). Plaintiff also fails to distinguish a decision of this Court
20 applying the nominative fair use defense on a motion to dismiss. *Adaptive Mktg.*
21 *LLC v. Girard Gibbs LLP*, No. CV 09-04739 RGK RCX, 2009 WL 8464168 (C.D.
22 Cal. Oct. 9, 2009) (Klausner, J.).

23 Plaintiff instead responds with a sweeping misinterpretation of the
24 nominative fair use defense, arguing that it is only available if Trek was required to
25 use Plaintiff's mark to describe Trek's product. (Opp'n at 18–19). Plaintiff
26 contends that Trek cannot assert the defense because "there was no requirement,
27 practical or otherwise, that Defendant use any element of Farley's persona in
28 connection with the production of its Fat Bikes." (*Id.* at 19). Plaintiff appears to be

-8- Defendant Trek Bicycle Corporation's
Reply ISO Motion to Dismiss Complaint

misinterpreting the first element by incorrectly replacing "the plaintiff's product" with "the defendant's product," and self-servingly ignoring that the fair use defense is available even where the defendant's ultimate goal is to describe the defendant's product. Plaintiff's novel interpretation is also contradicted by cases such as *Clark v. America Online Inc*. *See* No. CV-9805650 CAS (CWX), 2000 WL 33535712, at *5 (C.D. Cal. Nov. 30, 2000). In that case, the Court dismissed Dick Clark's Lanham Act claim concluding that America Online's reference to Dick Clark in an advertisement for its internet services to appeal to AARP members was a nominative fair use. (Mot. at 17). Of course, AOL was in no way required to use Dick Clark's name in that advertisement.

As justification for its misinterpretation, Plaintiff argues that otherwise "[i]t would eliminate all meaning to the Lanham Act §43(a) if a party could simply use [a] distinctive celebrity persona element as a trade name for its own product—and then simply contend this use was meant to describe, or compare its product, to the celebrity." (Opp'n at 19). This is simply untrue. Plaintiff conveniently ignores the third element of the defense, that is, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. This element prevents against what Plaintiff claims to fear, that is, "the exception swallowing the rule." (*Id.*) Here, Plaintiff only alleges that Trek used "Farley" as "hook" to associate with Chris Farley, just as Tesla Motors selected "Tesla" as an homage to Nikola Tesla, the famous Serbian inventor and engineer celebrated for creating the induction motor and alternating-current (AC) power transmission. This alone does not suggest sponsorship and therefore the nominative fair use defense is available to Trek.

**C.     Plaintiff's Section 17200 Claim Falls with the Others.**

Plaintiff argues that Trek does not dispute that it alleged a Section 17200 claim. This is of course incorrect, as Trek made clear that the Section 17200 claim is predicated on the Section 3344.1 claim and therefore falls with it. Interestingly,

1 Plaintiff then goes on to concede that without a predicate violation of law, its Section 17200 claim fails as a matter of law. (Opp'n at 19–20). In its Complaint, Plaintiff relies solely on the alleged Section 3344.1 violation as the predicate. (*See* Compl., ¶¶ 67–71). Apparently cognizant that its Section 3344.1 will not survive, Plaintiff asserts for the first time in its Opposition that the Lanham Act can also serve as the predicate for a Section 17200 claim. (Opp'n at 20). Plaintiff has not alleged this, so it is not before the Court. (*See* Compl., ¶ 68). Of course, if the Lanham Act also falls, the issue is moot.

### D. Leave to Amend Is Not Warranted.

The bare allegations in the Complaint and Plaintiff's failure to meaningfully respond to those deficiencies show that leave to amend would be futile and should not be granted. *See Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010); *see also Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137 (9th Cir. 2001) (dismissal with prejudice appropriate where plaintiff unable to posit possible amendments that would be consistent with the operative complaint and could also possibly state a claim for relief).

## IV. CONCLUSION

Defendant Trek Bicycle Corporation respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety with prejudice.

DATED: December 18, 2017

**PERKINS COIE LLP**

By: */s/ Michael B. Garfinkel*
    Michael B. Garfinkel
    Oliver M. Gold

Attorneys for Defendant
Trek Bicycle Corporation